540 P.2d 827

In the Matter of John DOE VIII, John Doe IX and John Doe X, children, Defendants-Appellants,

v.

STATE of New Mexico, Plaintiff-Appellee.

No. 1638.

Court of Appeals of New Mexico.

Aug. 20, 1975.

Certiorari Denied Sept. 23, 1975.

Thomas B. Root, Albuquerque, for appellants.

Toney Anaya, Atty. Gen., Jill Z. Cooper, Asst. Atty. Gen., Thomas A. Simons, IV, John A. Templeman, Asst. A'ttys. Gen., State Board of Ed., Santa Fe (amicus), for appellee.

OPINION

LOPEZ, Judge.

Petitions were filed in the Children's Court of Quay County alleging that each of the three respondents possessed less than one ounce of marijuana contrary to § 54-11-23, N.M.S.A.1953 (Repl. Vol. 8, pt. 2, Supp.1973) and that they were, thereby, delinquent children within the scope of the Children's Code, §§ 13-14-1 to 13-14-45, N.M.S.A.1953 (Repl. Vol. 3, Supp.1973).

The Children's Court found that respondents did, in fact, possess marijuana as charged in the petition and entered its order committing them to the Children's Ward of Quay County for a period of four days.

Respondents appeal from this finding and order, alleging several grounds for reversal: (1) that a continuance was inproperly denied; (2) that the court erred in admitting testimony of a non-expert; (3) that respondents were generally denied a fair trial; (4) that there was an illegal search and seizure as to Respondent X; (5) that a confession of Respondent X was improperly received into evidence; and (6) that Respondents VIII and IX were materially prejudiced as a result of the illegal search and seizure and confession involving Respondent X.

After careful review of the record and briefs of counsel, including an excellent amicus curiae brief filed on behalf of the State Board of Education, we affirm as to

all respondents on all the above issues. We reverse as to Respondents VIII and IX, for reasons stated below.

The record discloses that on March 27, 1974, Raymond Lane, a teacher at Tucumcari Junior High School, observed the respondents smoking a pipe while walking between classes. Lane testified that Respondent X placed the pipe inside his sweater before the boys reached the next class. During this time, the respondents had to pass between buildings, and it was while crossing portions of school property and a street that they were observed.

Lane contacted a vice-principal, Dave Berggren, after the start of the next class period. Berggren, who suspected a violation of school regulations prohibiting smoking, and Lane proceeded to a room where Respondent X was in class. Berggren took the respondent out of the class and into a vacant classroom, where he and Lane talked to him until Respondent X surrendered the pipe. This conversation took approximately 40 minutes. During this time, Respondent X told Berggren that the pipe contained marijuana. This respondent later made the same statement to the principal, Hurley Lovely.

Analysis of the contents of the pipe indicated the presence of marijuana. Respondent X testified that he did, in fact, possess the pipe in question. Respondents VIII and IX testified that they had smoked the pipe. Respondents VIII and IX denied any knowledge that the pipe contained marijuana. Respondent X acknowledged that the pipe was his. Respondents VIII and IX both testified that they knew the substance in the pipe was not tobacco.

(1) *Continuance*

It is the law in this state that the granting of a motion for continuance is within the sound discretion of the trial court and such action will not be disturbed on review unless there is a showing of abuse of that discretion. *State v. Sibold,* 83 N.M. 678, 496 P.2d 738 (Ct.App.1972).

The record shows that respondents requested, and were granted, a first continuance from April 15, 1974, to May 8, 1974, for purposes of allowing an independent test of the contents of the pipe. Counsel for respondents made another motion on the same grounds one day prior to trial. This motion was denied and it is this denial which serves as the subject for appeal on this point.

Counsel, at his oral motion, stated that he had been unexpectedly called out of town on April 30, 1974, and was thereby unable to make a request for a court order to have the district attorney surrender the necessary evidence for testing purposes. The court below ruled, and it is clear from the record, that respondents had ample time to make the necessary tests prior to any unexpected travel by their counsel.

Respondents further argue that the district attorney violated Rule 27, Rules of Criminal Procedure, § 41-23-27, N.M.S.A.1953 (2d Repl. Vol. 6, Supp. 1973), by not giving up the requested pipe residue without a court order (citing *State v. Billington,* 86 N.M. 44, 519 P.2d 140 (Ct.App.1974)). Rule 27, supra, which relates to discovery by governmental disclosure is not applicable to the case at bar. *In Re Doe, III,* 87 N.M. 170, 531 P.2d 218 (Ct.App.1975). The petitions had been pending nearly a month before counsel began his discovery. We conclude that the legislature, by enacting § 13-14-14 and § 13-14-26, supra, intended that there be prompt adjudication of cases under the Children's Code.

We conclude that the court's denial of respondents' motion was not an abuse of discretion.

(2) *Testimony of Expert Witness*

A state police narcotics agent testified for the state concerning the character and identity of the substance found in the pipe. Counsel stated, and the court so found, that the agent had never been qualified to testify in a felony case, but his use as an

expert had been limited to misdemeanor cases, preliminary hearings, and children's cases not involving felonies.

It appears from the record that the agent had conducted between 200 and 300 tests similar to the one in question, and that the results of approximately 80 of these tests had been used in various proceedings.

As the Supreme Court stated in *State v. Garcia,* 76 N.M. 171, 413 P.2d 210 (1966):

> ". . . It is the trial judge's responsibility to determine whether an offered expert is sufficiently qualified to testify in a cause, and he should exercise discretion in allowing or denying the testimony to be introduced. This discretion will be interfered with by us only when it has been abused. . . ."

The agent in this case was not a non-expert, but was sufficiently expert to qualify for the purposes of these petitions. The offense involved, were this not a Children's Court matter would have been a misdemeanor under § 54-11-23, supra. The court did not abuse its discretion in qualifying this witness for the purpose of testifying that the substance in Respondent X's pipe was marijuana.

(3) *General Issue of Fairness*

Respondents argue that the court below generally denied them a fair trial in that several miscellaneous irregularities occurred: (a) that the court never informed respondents of their rights under the Children's Code, supra; (b) that the trial was, in fact, public; (c) that the court was prejudiced in its conduct of the trial; (d) that the "Rule" was violated; [§ 20-4-615, N.M.S.A.1953 (Repl. Vol. 4, Supp.1973)] and (e) that the trial, taken as a whole, demonstrated cumulative error.

None of these points were raised below. While preservation of error is not scrupulously required in situations where the fundamental rights of parties are involved, at least some showing on appeal of the suggested fundamental or jurisdictional nature of the error is helpful. None has been offered. Indeed, the record does not support the fact that some of the irregularities existed.

We find no jurisdictional errors in any of the above alleged discrepancies that do find support in the record. Further, fundamental error will only be heard to prevent a plain miscarriage of justice where someone has been deprived of rights essential to a defense, *State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963), or to protect those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand. *State v. Rodriguez,* 81 N.M. 503, 469 P.2d 148 (1970); *State v. Jaramillo,* 85 N.M. 19, 508 P.2d 1316 (Ct.App. 1973). We have reviewed the record and determined that respondents were not denied a fair trial in any general or cumulative sense. *State v. Gutierrez,* 78 N.M. 529, 433 P.2d 508 (Ct.App.1967).

(4) *Search & Seizure*

The record indicates that Respondent X surrendered a pipe to the assistant principal, Berggren, after 40 minutes of discussion in an empty classroom, in the presence of the teacher, Lane.

This procedure raises Fourth Amendment questions, since it cannot be denied that this action by a public school official is "state action", rendering the Fourth Amendment applicable through the Fourteenth. *Tinker v. Des Moines Community School Dist.,* 393 U.S. 503, 21 L. Ed.2d 731, 89 S.Ct. 733 (1969); *Goss v. Lopez,* 419 U.S. 565, 42 L.Ed.2d 725, 95 S. Ct. 729 (1975).

The Fourth Amendment rights of persons to be secure against unreasonable searches and seizures has been expressly applied to juvenile proceedings in this state by § 13-14-25(C), supra:

> "C. In a proceeding on a petition alleging delinquency . . .
>
> "(2) evidence illegally seized or obtained shall not be received in evidence to establish the allegations of a petition against a child over objection; . . ."

Of course, the Fourth Amendment to the United States Constitution by its words, protects only against unreasonable searches and seizures. It has long been held that what is reasonable depends upon the facts and circumstances of each case. *State v. Kennedy,* 80 N.M. 152, 452 P.2d 486 (Ct.App.1969); *State v. Sedillo,* 79 N. M. 289, 442 P.2d 601 (Ct.App.1968). Ordinarily, government officials are held to a very high standard of reasonableness. Citizens are protected by the fact that police officers must obtain warrants via a procedure whereby reasonableness is determined by someone neutral and detached from the business of solving crime. In the absence of a warrant, exceptional circumstances which are jealously and carefully drawn suffice for the reasonableness requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Our question, therefore, is whether to engraft these very same procedures onto our school system.

The realities of school situation, common sense and the increasing weight of authority in judicial decisions teaches us that something less than the strict standards to which police officers are held is appropriate given the facts and circumstances of school searches. Crime in the schools is reaching epidemic proportions. In the three years between 1970 and 1973, homicides increased by 18.5 percent, rapes and attempted rapes by 40.1 percent, robberies by 36.7 percent, assault by 85.3 percent, drug related offenses by 37.5 percent and the number of weapons confiscated by school authorities increased by 54.4 percent. Birch Bayh, Chairman, Preliminary Report of the Subcommittee to Investigate Juvenile Delinquency of the United States Senate Judiciary Committee (1975). In addition, ordinary school discipline is essential if the educational function is to be performed. *Goss v. Lopez,* supra. Even the majority in *Goss* recognized that events calling for discipline are frequent and sometimes require immediate action. To engraft the cumbersome warrant requirement onto school searches would mean that police assistance would be required for even the most trivial searches, e.g. for chewing gum. See R.Cr.P. 17, § 41–23–17, N.M.S.A.1953 (2d Repl. Vol. 6, 1972 Supp.1973). The normal exceptions to the warrant requirement would have little application in the school situation.

Thus, we adopt the standard that school officials may conduct a search of a student's person if they have a reasonable suspicion that a crime is being or has been committed or they have reasonable cause to believe that the search is necessary in the aid of maintaining school discipline. *People v. D.,* 34 N.Y.2d 483, 358 N.Y.S.2d 403, 315 N.E.2d 466 (1974); *People v. Jackson,* 65 Misc.2d 909, 319 N.Y.S.2d 731 (1971); *In re State in Interest of G.C.,* 121 N.J.Super. 108, 296 A.2d 102 (1972); *State v. Baccino,* 282 A.2d 869, 49 A.L.R.3d 973 (Del.Super.1971); See generally, Annot., 49 A.L.R.3d 978 (1973). We believe that this standard, arrived at by balancing the privacy rights of the students against the unique administrative responsibilities of the school officials, should adequately protect the students from arbitrary searches and give the school officials enough leeway to fulfill their duties. *People v. D.,* supra; *State v. Baccino,* supra. Among the factors to be considered in determining the sufficiency to cause to search a student are the child's age, history and record in the school, the prevalence and seriousness of the problem in the school to which the search was directed, the exigency to make the search without delay and the probative value and reliability of the information used as a justification for the search. See *People v. D.,* supra.

Judged by the above enunciated standards, it cannot be doubted that the instant search was reasonable. The subject of the search was a thirteen year old boy who was actually seen by the school official smoking a pipe on school property against school regulations. We hold that the search of Respondent X was based

upon reasonable cause to believe that the search was necessary in the aid of maintaining school discipline. The trial court was accordingly correct in admitting into evidence the fruits of that search.

(5) *Confession*

Both the vice-principal, Berggren, and the principal, Lovely, testified the Respondent X told them that the pipe contained marijuana. It is contended that this confession was the result of improper custodial interrogation, and therefore inadmissible. Section 13–14–25(C), supra, states:

"C. In a proceeding on a petition alleging delinquency . . .

"(1) an extra-judicial statement that would be constitutionally inadmissible in a criminal matter shall not be received in evidence over objection;

" . . .

"(3) an extra-judicial admission or confession made by the child out of court is insufficient to support a finding that the child committed the acts alleged in the petition unless it is corroborated by other evidence."

It is clear from the record, and the court so found, that any confession by Respondent X was corroborated, as to X, by the testimony of the teacher, Lane, who saw the respondent in possession of the pipe and by the expert's testimony as to its contents.

We do not read *Goss v. Lopez*, supra, to require the giving of Miranda-type warnings in cases involving in-school disciplinary matters. See also *People v. Shipp*, 96 Ill.App.2d 364, 239 N.E.2d 296 (1968). The elaborate criminal trial model has no place in the school house.

The purpose of most school-house interrogations is to find facts related to violations of school rules or relating to social maladjustments of the child with a view toward correcting it. Giving Miranda-type warnings would only frustrate this purpose. It would put the school official and student in an adversary position. This would be in direct opposition to the school official's role of counselor.

The question remains, nevertheless, whether the confession was voluntary. *State v. Turnbow*, 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461 (1960). Respondent X does not argue that any negative coercion occurred to render the confession involuntary. See *State v. Ortega*, 77 N.M. 7, 419 P.2d 219 (1966). The respondent contends, rather, that school officials held out inducements to X. *State v. Benavidez*, 87 N.M. 223, 531 P.2d 957 (Ct.App.1975).

The only pertinent statement on this matter occurred during Lane's testimony:

"He [X], said he told him [Berggren] he hadn't been smoking anything and that he didn't have anything on him, and Mr. Berggren said that, 'It would be better if you give it to me now then if I call the police and have them come down here and get it,' and [X] said, then [X] said, 'What will you do it I give it to you?' And then Mr. Berggren just repeated what he had said. He said, 'It would be better that you give the pipe to me than if I have to get the police down here.' So [X] just kept saying, 'Well what will you do to me if I do give it to you?' And so Mr. Berggren said, 'Well, then, if you won't give it to me, I'll just have to get the police down here.' And he started one time to get the police down here and I said, I told [X] it would be better that he give it to him now and it would cause him a lot less trouble, and therefore, he [gave] it to him. He opened his sweater, he took it out of his pocket and handed it to Mr. Berggren, and it was a brown pipe with a white paper on it and rubber band."

While this conversation, particularly Lane's statement, raises a close question of impropriety under the *Benavidez* Rule, it must be noted that this conversation was strictly related to the production of the pipe which we have already held the school official was entitled to seize. It did not

relate to any questioning pertaining to its contents.

Since this is the only testimony of record dealing with possible inducements, and since the confession was apparently made independently of this line of questioning, we do not find that the confession relating to marijuana was improperly induced, involuntary and, thereby, inadmissible.

(6) *Prejudice to VIII and IX because of the Search and Seizure of X and the Confession by X*

This point, depending as it does on the outcome of points (4) and (5), supra, must be decided adversely to respondents.

*Reversal as to Respondents VIII and IX*

Counsel at trial adequately notified the court of the lack of evidence to support any finding of respondents having committed the act alleged. This point was not raised on appeal, but our scope of review includes the consideration of questions involving fundamental rights of a party. Rule 11 of Rules Governing Appeals to the Supreme Court and Court of Appeals, § 21–12–11, N.M.S.A.1953 (1974 Interim Supp.); see also dissenting opinion in *State v. Cutnose,* 87 N.M. 307, 532 P.2d 896 (Ct.App.1974); compare *State v. Cutnose,* 87 N.M. 300, 532 P.2d 889 (Ct.App. 1975).

It is a fundamental right of a party to be convicted of a crime, which in this case is a necessary prerequisite to a determination of delinquency, based upon evidence of the elements of the crime. Section 13–14–3(N) and (O), supra. In a prosecution for a violation of § 54–11–23, supra, the state must prove that the respondents had knowledge of the presence and character of the item possessed. *State v. Giddings,* 67 N.M. 87, 352 P.2d 1003 (1960); *State v. Bauske,* 86 N.M. 484, 525 P.2d 411 (Ct.App.1974).

A careful reading of the record disclosed absolutely no evidence of knowledge by Respondents VIII and IX of the character of the item allegedly possessed.

We agree that there is no requirement that the proof of this knowledge be by direct or uncontradicted evidence. But "the evidence must be such as discloses some conduct, declarations or actions on the part of the accused from which the fact finder may fairly infer and which is sufficient to satisfy it beyond a reasonable doubt of knowledge in the accused of the presence and nature of the narcotics." *State v. Garcia,* supra.

The record discloses a degree of furtiveness on the parts of respondents, in that they did their smoking and passed the pipe around between buildings while changing classes. But it is also obvious that the same acts would have obtained for the smoking of tobacco, in light of the school regulation prohibiting such conduct. This does not amount to conduct sufficient to infer that the smokers knew the character of the substance they were using.

We believe that on the evidence in the record, no adult would have been convicted of possession of marijuana under § 54–11–23, supra. See *State v. John Doe,* Supreme Court No. 10,483, decided June 25, 1975. Consequently, we hold that the fundamental rights of Respondents VIII and IX have been violated. This is a matter which raises serious questions as to the innocence of these parties. *State v. Rodriguez,* supra.

In deciding these cases which present issues of first impression in the appellate courts of New Mexico, we have tried judicially to uphold and protect the dignity of the school children. At the same time, we have also considered the rights and duties of those people involved in the school system as much as the New Mexico and United States Constitutions will allow us to do so.

Accordingly, the judgment and order as applied to Respondent X is affirmed. The judgment and order as applied to Respond-

ents VIII and IX is hereby reversed. The causes against Respondents VIII and IX are dismissed and all records thereof are ordered destroyed.

It is so ordered.

HENDLEY, J., concurs.

HERNANDEZ, J., dissents. For dissenting opinion see 542 P.2d 834.