336 S.E.2d 728

**STATE of West Virginia**

v.

**JOSEPH T., a Child Under the Age of 18 Years.**

No. 16088.

Supreme Court of Appeals
of West Virginia.

July 5, 1985.

Dissenting Opinion Oct. 29, 1985.

Concurring Opinion Nov. 8, 1985.

William T. Watson & Associates, Frank Cuomo, Jr. & Marc B. Chernenko, Wellsburg, for appellant.

Charlie Brown, Atty. Gen., Janet Frye Steele, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice.

This action is before this Court upon the petition of Joseph T., an infant under the age of 18 years, for an appeal from the final order of the Circuit Court of Brooke County, West Virginia. *W.Va.R.Crim.P.* 37. The circuit court, during delinquency proceedings concerning the appellant, found that the appellant possessed marihuana in violation of *W.Va.Code,* 60A-4-401 [1983], and placed the appellant upon probation. *W.Va.Code,* 60A-4-407 [1971]. In this appeal, the appellant challenges the warrantless search of his school locker by school authorities. That search resulted in the finding of the circuit court that the appellant possessed marihuana.

By order entered on March 13, 1984, this Court granted the appellant's motion for leave to move to reverse. This Court has before it the petition for appeal, the motion to reverse, all other matters of record and the briefs of counsel.

I

The appellant was a student in the eighth grade at Follansbee Middle School in Brooke County. On the morning of March 11, 1982, Joseph Martray, an assistant principal at Follansbee, noticed the smell of alcohol upon Warren M., a student. Warren M. admitted to Martray that on the

way to school he had consumed beer at the appellant's home.

Suspecting that the appellant "may have brought some type of alcoholic beverage into the school," Martray directed Charles Baker and Joseph Starcher, teachers at the school, to search the appellant's locker. The record indicates that students at Follansbee were assigned separate lockers with combination locks. School authorities could open those lockers with a master key.

Baker and Starcher opened the appellant's locker while Martray talked with the appellant in the principal's office. Although no alcoholic beverages were located, Baker and Starcher found various items in a jacket in the locker including two or three wooden pipes, a number of "wrapper papers" for making cigarettes and a small plastic box. The plastic box contained several handmade cigarettes which were packed with what appeared to be marihuana.[1] Baker and Starcher then placed the items back in the jacket and locked the jacket in the locker. With Starcher waiting at the locker, Baker went to the principal's office and returned with the appellant, Martray and Robert Guio (Principal at Follansbee). The appellant's locker was again opened and its contents examined.

Thereafter, a petition signed by the Principal at Follansbee was filed in the Circuit Court of Brooke County. The petition alleged that the appellant possessed marihuana on March 11, 1982, and was thus a delinquent child within the meaning of *W.Va.Code,* 49-1-4 [1978].[2] The appellant

---

1. The record in this action contains the "State's Answer to Defendant's Motion for Discovery." Attached to that answer is the March 1982 report of a toxicologist indicating that the plastic box found in the jacket in the appellant's locker contained "seven (7) partially smoked handmade [marihuana] cigarettes."

2. Marihuana is a "controlled substance" under the West Virginia Uniform Controlled Substances Act. *W.Va.Code,* 60A-1-101 [1983], *et seq.* Possession of marihuana is a crime under *W.Va.Code,* 60A-4-401 [1983].
 *W.Va.Code,* 49-1-4 [1978], provides:
 'Delinquent child' means a child:

(1) Who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult, punishable by confinement in a jail or imprisonment;

(2) Who commits an act designated a crime under a municipal ordinance or state law not punishable by confinement in a jail or imprisonment;

(3) Who, without just cause, habitually and continually refuses to respond to the lawful supervision by such child's parents, guardian or custodian;

(4) Who is habitually absent from school without good cause; or

moved to suppress the evidence found in his locker. The circuit court, however, denied that motion. Subsequently, the circuit court found that the appellant had possessed marihuana and, by order entered in March 1983, placed the appellant upon probation.

## II

The Constitution of the United States and the Constitution of West Virginia provide the public with protection against "unreasonable searches and seizures."[3] The appellant contends that the warrantless search of his school locker violated those constitutional principles and that, consequently, the evidence seized from the locker should have been suppressed.[4] The circuit court, however, found that the search was reasonable. The appellee, the State of West Virginia, contends that the circuit court's finding should be affirmed.

At the outset, we note that in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), in which the Supreme Court of the United States struck down a requirement in West Virginia that school children salute and pledge allegiance to the American flag, the court indicated that the Constitution of the United States "protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within

the limits of the Bill of Rights." 319 U.S. at 637, 63 S.Ct. at 1185, 87 L.Ed.2d at 1637.

In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), a New Jersey high school student, T.L.O, allegedly smoked a cigarette in a school lavatory, in violation of school regulations. Later, in the principal's office, the student denied she had been smoking, and the assistant vice principal began to search her purse. In the purse, the assistant vice principal found a package of cigarettes and a package of cigarette rolling papers. Based upon his experience, the assistant vice principal associated the possession by a student of rolling papers with the use of marihuana. He then searched the purse more thoroughly and found "marihuana, a pipe, a number of empty plastic bags, a substantial quantity of money in one-dollar bills, an index card that appeared to be a list of students who owed T.L.O. money, and two letters that implicated T.L.O. in marihuana dealing." 105 S.Ct. at 737. Subsequently, the student was adjudged to be a delinquent child and placed upon probation.

Upon appeal, the Supreme Court of New Jersey, in *T.L.O.*, held the search of the student's purse to be unreasonable. The Supreme Court of the United States, however, upheld the search.

Stating that the constitutional prohibition against unreasonable searches and seizures applies to searches conducted by public school authorities, the Supreme Court of the United States, in *T.L.O.*, recognized

---

(5) Who willfully violates a condition of a probation order or a contempt order of any court.

**3.** *U.S. Const.* amend. IV provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, *W.Va. Const.* art. III, § 6, provides:

The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue

except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

**4.** In his petition for appeal, the appellant asserts:

Martray [the assistant principal] decided to conduct a search of the [appellant's] locked school locker at a time when the [appellant] himself had not been questioned regarding the incident, had not been the subject of any complaints or reports regarding his having shown any effects of the alleged consumption of beer and at a time when there had not been any report or allegation that either [Warren M.] or he had brought any such beverage onto school premises.

that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." 105 S.Ct. at 743. Thus, the court held that "school officials need not obtain a warrant before searching a student who is under their authority." 105 S.Ct. at 743. Furthermore, the court stated:

> We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the ... action was justified at its inception,' *Terry v. Ohio,* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] ...; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' *ibid.* Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in

light of the age and sex of the student and the nature of the infraction.

105 S.Ct. at 743–44.[5]

The Supreme Court of the United States, in *T.L.O.*, held the search of the student's purse to be reasonable. Recognizing that the case involved two searches, "with the first—the search for cigarettes—providing the suspicion that gave rise to the second—the search for marihuana," 105 S.Ct. at 745, the court found, upon the record before it, that the assistant vice principal's search of the purse for cigarettes was reasonable. The court then stated:

> Our conclusion that Mr. Choplick's [the assistant vice principal's] decision to open T.L.O.'s purse was reasonable brings us to the question of the further search for marihuana once the pack of cigarettes was located. The suspicion upon which the search for marihuana was founded was provided when Mr. Choplick observed a package of rolling papers in the purse as he removed the pack of cigarettes. Although T.L.O. does not dispute the reasonableness of Mr. Choplick's belief that the rolling papers indicated the presence of marihuana, she does contend that the scope of the search Mr. Choplick conducted exceeded permissible bounds when he seized and read certain letters that implicated T.L.O. in drug dealing. This argument, too, is unpersuasive. The discovery of the rolling papers concededly gave rise to a reasonable suspicion that T.L.O. was carrying marihuana as well as cigarettes in her purse. This suspicion justified further exploration of T.L.O.'s purse, which turned up more evidence of drug-related activities: a pipe, a number of plastic bags of the type commonly used to store marihuana, a small quantity of marihuana, and a fairly substantial amount of money. Under these circumstances, it was not un-

---

**5.** With respect to the expectations of privacy of schoolchildren, the court in *T.L.O.* stated:

> Although this Court may take notice of the difficulty of maintaining discipline in the public schools today, the situation is not so dire that students in the schools may claim no legitimate expectations of privacy.
>
> ....

> In short, schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items [keys, money, items for personal hygiene and grooming, etc.], and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds.
>
> 105 S.Ct. at 742.

reasonable to extend the search to a separate zippered compartment of the purse; and when a search of that compartment revealed an index card containing a list of 'people who owe me money' as well as two letters, the inference that T.L.O. was involved in marihuana trafficking was substantial enough to justify Mr. Choplick in examining the letters to determine whether they contained any further evidence. In short, we cannot conclude that the search for marihuana was unreasonable in any respect.

105 S.Ct. at 746–47.

It should be noted that, in *T.L.O.*, the Supreme Court of the United States did not address the question of searches by school authorities of student lockers. 105 S.Ct. at 741, n. 5. Nor did the court address the question of searches by school authorities "in conjunction with or at the behest of law enforcement agencies...." 105 S.Ct. at 744, n. 7. Finally, the court, in *T.L.O.*, did not address the question of whether, had the search been found to be unreasonable, the evidence against T.L.O. could have been excluded from consideration in subsequent criminal proceedings against her. The court stated: "In holding that the search of T.L.O.'s purse did not violate the Fourth Amendment, we do not implicitly determine that the exclusionary rule applies to the fruits of unlawful searches conducted by school authorities." 105 S.Ct. at 739, n. 3.

The question of searches by school authorities of student lockers was addressed, however, in *In re W.*, 29 Cal.App.3d 777, 105 Cal.Rptr. 775 (1973). In *In re W.*, a California court of appeal had before it a case in which the assistant principal of a high school opened a student locker with a master key, having been told by other students that the locker contained marihuana. The assistant principal found in the locker a "sack of marijuana." Later, the student in question was brought to the locker, and the student opened the locker (still containing the marihuana) in the presence of the principal and assistant principal of the school. The student was ultimately placed upon probation.

Holding the search, conducted without a search warrant, to be reasonable, the court, in *In re W.*, stated:

> We believe that the appropriate test for searches by high school officials is two-pronged. The first requirement is that the search be within the scope of the school's duties. The second requirement is that the action taken, the search, be reasonable under the facts and circumstances of the case. Although *in loco parentis* is applicable, the Fourth Amendment limits that power to acts that meet above requirements.

29 Cal.App.3d at 782, 105 Cal.Rptr. at 778.

*See also In re Donaldson*, 269 Cal. App.2d 509, 75 Cal.Rptr. 220 (1969), and *Horton v. Goose Creek Independent School District*, 690 F.2d 470, *reh'g denied*, 693 F.2d 524, 525 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). In *In re Donaldson*, the court upheld a warrantless search by a high school vice principal of a student's locker (which contained marihuana) which search resulted in the student being adjudged a "ward of the juvenile court." The vice principal, in *In re Donaldson*, had conducted the search upon information that the student had been selling "speed or methedrine pills."[6] In *Horton*, the United

---

**6.** It should be noted that in *Gordon J. v. Santa Ana Unified School District*, 162 Cal.App.3d 530, 208 Cal.Rptr. 657 (1984), a California court of appeal criticized the decisions in *In re W.* and *In re Donaldson* for not providing more extensive Fourth Amendment protection with respect to searches conducted in the schools by school authorities. 162 Cal.App.3d at 540, 208 Cal. Rptr. at 663.

In *Gordon*, the court held that "the exclusionary rule is fully available in criminal prosecutions and juvenile proceedings with respect to evidence illegally obtained by high school offi-

cials...." 162 Cal.App.3d at 542, 208 Cal.Rptr. at 665. However, the court further held that the exclusionary rule was "inapplicable in high school disciplinary proceedings...." 162 Cal. App.3d at 544, 208 Cal.Rptr. at 666.

*Compare State v. Young*, 234 Ga. 488, 216 S.E.2d 586, *cert. denied*, 423 U.S. 1039, 96 S.Ct. 576, 46 L.Ed.2d 413 (1975), involving a search by school authorities of a 17-year old public school student (suspected of possessing marihuana) "the exclusionary rule would not apply even if the Fourth Amendment had been violated...." 234 Ga. at 488, 216 S.E.2d at 588.

States Court of Appeals, in reviewing a "school district's canine drug detection program," stated that if a trained dog's reaction is to justify a search of a student's car or locker, the reaction "must give rise to *reasonable suspicion* that the search will produce something...." 690 F.2d at 482 (emphasis added).

As the Supreme Court stated in *T.L.O.,* supra:

> The majority of courts that have addressed the issue of the Fourth Amendment in the schools have ... [held that] the Fourth Amendment applies to searches conducted by school authorities, but the special needs of the school environment require assessment of the legality of such searches against a standard less exacting than that of probable cause. These courts have, by and large, upheld warrantless searches by school authorities provided that they are supported by a reasonable suspicion that the search will uncover evidence of an infrac-

tion of school disciplinary rules or a violation of law.

105 S.Ct. at 739, n.2.[7]

Not all searches in the schools have been upheld. The Supreme Court of Washington, in *Kuehn v. Renton School District No. 403,* 103 Wash.2d 594, 694 P.2d 1078 (1985), afforded constitutional protection against unreasonable searches and seizures to a high school student who challenged the policy of his school that students planning to participate in a band concert tour must submit to a predeparture luggage search. The search was to be conducted by parent chaperones. The school's decision to search was inspired by an incident two years earlier which involved the possession of liquor by two students in a hotel room.

Indicating that there was no evidence other than a "generalized probability" that the students in question had contraband in their luggage, the court, in *Kuehn,* held the search policy to be unreasonable. The court stated:

> Nevertheless, in the action before this Court we do not reach the question of whether, in any context, the exclusionary rule "applies to the fruits of unlawful searches conducted by school authorities." See *T.L.O., supra.*

7. In annot., 49 A.L.R.3d 978 (1973), entitled "Admissibility, in Criminal Case, of Evidence Obtained By Search Conducted By School Official or Teacher," the author, categorizing various case decisions concerning school searches, states in part:

> A number of courts have taken the position that school officials, acting alone, are private persons for purposes of the exclusionary rule. These courts generally reason that the Fourth Amendment prohibition against unreasonable searches and seizures requires the exclusion of evidence only where the unreasonable search is made by a law enforcement officer; and thus, if no law enforcement official was involved in a particular search conducted by school officials, the exclusionary rule is inapplicable.
>
> It has been held, however, that a school official acting alone in conducting a search is a governmental agent for purposes of the exclusionary rule. In support of this conclusion, it was pointed out that public school officials are state employees, whose work is under the direction of a governmental body.
>
> Where the school official does not act alone in conducting the challenged search, but, as is often the case, acts in conjunction with law enforcement officers, the generally accepted

> view is that the exclusionary rule is applicable, and any evidence seized in such a search, if the search was unreasonable, cannot be used in a criminal trial.

49 A.L.R.3d at 981.

Included in that annotation is a discussion of cases relating to searches by school officials or teachers of student lockers. Further information concerning searches by school officials or teachers of student lockers may be found in E. Bolmeier, *Legal Limits of Authority Over the Pupil* § 4.5. (Michie 1970); E. Fisher, *Search and Seizure* § 25, n.129 (1970); E. Gee, *Education Law and the Public Schools: A Compendium* s–30 (1978); C. Hooker (editor), *The Courts and Education* 171–74 (1978); H. Hudgins, Jr., *Law and Education: Contemporary Issues and Court Decisions* § 10.4 (Michie 1979); 3 W. LaFave, *Search and Seizure* § 10.11 (West 1978); 3 J. Rapp, *Education Law* § 9.04[7][c](1984); 1 W. Ringel, *Searches & Seizures, Arrests and Confessions* § 17.2 (2nd ed. 1985); J. Varon, *Searches, Seizures and Immunities* ch. IX, § 9 (2nd ed. 1974).

See generally Phay, *Searches of Students and the Fourth Amendment,* 5 J.L. & Educ. 57 (1976); Stewart, *And in Her Purse the Principal Found Marihuana,* 71 A.B.A.J. 50 (Feb.1985); Trosch, *Public School Searches and the Fourth Amendment,* 11 J.L. & Educ. 41 (1982); Comment, *Public School Searches and the Fourth Amendment,* 9 U. Dayton L.Rev. 521 (1984); Comment, *Search and Seizure: Is the School Official a Policeman or Parent?* 22 Baylor L.Rev. 554 (1970); Note, *Search and Seizure in the Public Schools,* 36 La.L.Rev. 1067 (1976).

The validity of searches of school children by school officials is judged by the reasonable belief standard. The reasonable belief standard requires that there be a reasonable belief on the part of the searching school official that the individual student searched possesses a prohibited item. When school officials search large groups of students solely for the purpose of deterring disruptive conduct and without any suspicion of each individual searched, the search does not meet the reasonable belief standard. Because the search at issue here was conducted without individualized suspicion the student's rights under the Fourth Amendment were violated.

103 Wash.2d at ——, 694 P.2d at 1079.

Similarly, in *Bellnier v. Lund*, 438 F.Supp. 47 (N.D.N.Y.1977), the United States District Court afforded constitutional protection against unreasonable searches and seizures to a class of fifth grade students who, as part of a search for $3.00 allegedly taken by a student, were ordered by school authorities to go to the student's respective male and female restrooms and "strip down to their undergarments...." 438 F.Supp. at 50. Later, an action alleging violations of the student's civil rights was brought against the school authorities, and the court determined the search to be unreasonable, "there being no reasonable suspicion to believe that each student searched possessed contraband or evidence of a crime." 438 F.Supp. at 54. The court in *Bellnier* stated, "in view of the relatively slight danger of the conduct involved (as opposed to drug possession, for example), the extent of the search, and the age of the students involved, this Court cannot in good conscience say that the search undertaken was reasonable." 438 F.Supp. at 54.[8]

On the other hand, a 17-year old student was criminally prosecuted in *State v. Young*, 234 Ga. 488, 216 S.E.2d 586, *cert. denied*, 423 U.S. 1039, 96 S.Ct. 576, 46 L.Ed.2d 413 (1975), where the student was directed by school authorities to empty the pockets of his pants, and marihuana was found. Holding that the school authorities were "state officers whose action is state action bringing the Fourth Amendment into play ...," 234 Ga. at 493, 216 S.E.2d at 591, the Supreme Court of Georgia, in *Young*, nevertheless held the search to be reasonable. The court stated:

> It is urged that [the] involuntary presence at school [of a public school student] argues for according to [the student] a higher level of Fourth Amendment protection. We cannot agree. It is not merely the unruly ... student who is involuntarily in school. All the other students are there involuntarily also, and are forced to associate with the ... immature and unwise few-closely and daily. The state owes those students a safe and secure environment. Searches of students directed to that end are reasonable under the Fourth Amendment on considerably less than probable cause.

234 Ga. at 496, 216 S.E.2d at 592.

### III

In this action, we do not have before us the question of searches by school authori-

---

**8.** Discussing the applicability of the Fourth Amendment in the public school context, the court in *Bellnier* observed:

> In finding that the Fourth Amendment does apply in this case, this Court does not mean to imply that a showing of probable cause is necessary in order to uphold the search as reasonable. In analyzing the search to determine reasonableness, the Court must weigh the danger of the conduct, evidence of which is sought, against the student's right of privacy and the need to protect them from the humiliation and psychological harms associated with such a search.
> ....
> This Court holds that, while there need not be a showing of probable cause in a case such

as this, there must be demonstrated the existence of some articulable facts which together provided reasonable grounds to search the students, and that the search must have been in furtherance of a legitimate purpose with respect to which school officials are empowered to act....
> ....
> In making such an analysis, some factors which warrant consideration are: 1) the child's age; 2) the child's history and record in school; 3) the seriousness and prevalence of the problem to which the search is directed; and 4) the exigency requiring an immediate warrantless search.

438 F.Supp. at 53.

ties "in conjunction with or at the behest of law enforcement agencies...." *T.L.O., supra.* Moreover, inasmuch as we hold that, for the reasons discussed below, the search of the appellant's locker was reasonable, we do not reach the question of whether, in any context, the exclusionary rule "applies to the fruits of unlawful searches conducted by school authorities." *T.L.O., supra. See also* n.6, *supra.* As the cases cited above demonstrate, however, a search and seizure occurred in this action, and the validity of that search and seizure is properly before this Court for review.

■ In syllabus point 1 of *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), we held:

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

■ This Court is of the opinion that public school students in West Virginia are entitled under *U.S. Const.* amend. IV and *W.Va. Const.* art. III, § 6, to security against unreasonable searches and seizures conducted in the schools by school principals, teachers and other school authorities. Furthermore, upon a review of the authorities in this area of the law, we hold that in determining whether a warrantless search concerning a public school student conducted by school authorities is reasonable under *U.S. Const.* amend. IV and *W.Va. Const.* art. III, § 6, in the context of delinquency or criminal proceedings instituted against the student, the search is to be assessed in view not only of the rights of the public school student but also in view of the need of this State's educational system to prevent disruptive or illegal conduct by public school students; in particular, the search must be reasonable in terms of (1) the initial justification for the search and

(2) the extent of the search conducted; the initial justification for the search is determined by the "reasonable suspicion standard" (a standard less exacting than "probable cause") under which a search is justified where school authorities have reasonable grounds for suspecting that the search will reveal evidence that the student violated the rules of the school or the law; the extent of the search conducted is reasonable when reasonably related to the objective of the search and not excessively intrusive to the student.

In so holding, we recognize the entitlement of public school children to security against unreasonable searches and seizures conducted by school authorities. We also recognize, however, the many problems school authorities must face on a daily basis in keeping the school environment conducive to learning.

In this action, the appellant's locker was searched at the request of assistant principal Martray by Baker and Starcher, teachers at Follansbee Middle School. Although Baker and Starcher were looking for alcoholic beverages, they found various items in a jacket in the locker, including wooden pipes, cigarette "wrapper papers" and a small plastic box which contained what appeared to be marihuana. They left the items in the locker. Subsequently, in the presence of various school authorities and the appellant, the locker was again opened and its contents examined.

■ The record in this action indicates that assistant principal Martray had reasonable grounds for suspecting that a search of the appellant's locker would reveal the presence of an alcoholic beverage brought to school by the appellant in violation of the rules of the school. That suspicion was based upon information that the appellant's companion, Warren M., had consumed beer at the appellant's home that morning and that the smell of such drinking was present upon Warren M. at the school. Although Martray's suspicion, that the appellant may have brought alcoholic beverages to the school, may not have reached the level of "probable cause," we are of the opinion that Martray instituted the search of the appellant's locker under

circumstances consistent with the "reasonable suspicion standard," discussed above.

 Furthermore, we conclude that the extent of the search conducted by Baker and Starcher was within permissible limits. Upon entering the locker with a master key which, the record indicates, the school kept as a means of opening any student locker,[9] the jacket was observed. Under the circumstances of this case, Baker and Starcher were not unwarranted or "excessively intrusive" in reaching into the pockets of the jacket. In *T.L.O., supra,* a general search of a purse was extended to a "zippered compartment" of the purse, and the search was upheld. We are of the opinion that the discovery in this case of the wooden pipes and cigarette "wrapper papers" in the jacket gave rise to a reasonable suspicion that the jacket found in the locker also contained marihuana. The discovery of suspected marihuana in the locker was "reasonably related" to the search for alcoholic beverages.[10]

 We hold that where an assistant principal of a public school had reasonable grounds for suspecting that the locker of a public school student contained an alcoholic beverage in violation of the rules of the school, and a warrantless search of the student's locker revealed a number of marihuana cigarettes, the search, in the context of delinquency or criminal proceedings instituted against the student, did not constitute a violation of the student's right under *U.S. Const.* amend. IV and *W.Va. Const.* art. III, § 6, to security against unreasonable searches and seizures.[11]

The circuit court was correct in denying the appellant's motion to suppress the evidence found in his locker. Accordingly, the final order of the Circuit Court of Brooke County is hereby affirmed.

Affirmed.

**9.** The Supreme Court of Kansas in *State v. Stein,* 203 Kan. 638, 456 P.2d 1 (1969), *cert. denied,* 397 U.S. 947, 90 S.Ct. 966, 25 L.Ed.2d 128 (1970), stated that "it [is] a proper function of school authorities to inspect the lockers under their control and to prevent their use … for illegal purposes." 203 Kan. at 640, 456 P.2d at 3. Determining that school authorities acted properly in opening a high school student's locker at the request of police officers searching for stolen property, the court, in syllabus point 2, held: "A high school principal having custody and control of school lockers and having access thereto, and possessing a master list of all lock combinations and a key which will open every locker, is empowered to open and search the same for contraband upon the request of officers."

**10.** It should be noted that a student handbook was admitted into evidence by the circuit court. The handbook, approved by the West Virginia Board of Education on July 11, 1975, is entitled "Rights and Responsibilities of Students in West Virginia—A Handbook for Students in the Public Schools." Section VIII of the handbook is entitled "Search and Seizure" and provides:

The Fourth Amendment to the United States Constitution protects all citizens from unreasonable searches and seizures.

. . . .

Although the law generally allows school officials to search lockers, courts have warned that school authorities should be careful not to abuse this right. Students do have rights to privacy and may reasonably expect that their lockers will not be searched unless appropri-

ate school officials consider a search absolutely necessary to maintain the integrity of the school environment and to protect other students.

The principal should see that the student involved and another witness are present when a locker search is conducted.

. . . .

The Fourth Amendment protects you from arbitrary (or random) searches not only from the police but also from school authorities as well.

Although the appellant was not present at the locker when the initial search was conducted by Baker and Starcher, the appellant was brought to the locker shortly thereafter, and the locker was opened in the presence of various school authorities and the appellant. Although the absence of the appellant at the initial search of the locker indicates that the school authorities failed to strictly follow the student handbook, such a violation of the handbook, we conclude, does not invalidate the search. The appellee, State of West Virginia, indicates in its brief that in 1981 the West Virginia Board of Education deleted from the handbook the requirement that the student in question be "present when a locker search is conducted."

**11.** *Cf.* syl. pt. 5, *State v. Bruner,* 143 W.Va. 755, 105 S.E.2d 140 (1958), *cert. denied,* 358 U.S. 937, 79 S.Ct. 328, 3 L.Ed.2d 309, *reh'g denied,* 359 U.S. 921, 79 S.Ct. 600, 3 L.Ed.2d 584 (1959) [*questioned* in *State v. Weigand,* 169 W.Va. 739, 289 S.E.2d 508, 510 (1982)]: "The search of a locker at a public bus station is not an unlawful or unreasonable search prohibited by any constitutional provision."

McGRAW, Justice, dissenting:

Although our state constitution's search and seizure provision is nearly identical to the fourth amendment, *compare* West Virginia Constitution art. III, § 6 *with* United States Constitution amend. IV, students are granted rights under our state constitution that have been rejected by the United States Supreme Court under the federal constitution, *compare Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979) *with San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Furthermore, the student's constitutional right, under West Virginia Constitution art. XII, § 1, to a "thorough and efficient education" is not abstract, but enforceable. *See* Syl. 3, 4, and 5, *Pauley, supra.*

In interpreting the meaning of our state constitution's "thorough and efficient education" clause, this Court noted in Syllabus Point 2 of *Pauley*, that, "The provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution." This proposition was also recognized in *New Jersey v. T.L.O.*, 469 U.S. 325, 343 n. 10, 105 S.Ct. 733, 745 n. 10, 83 L.Ed.2d 720, 736 n. 10 (1985), where the United States Supreme Court conceded that, "[N]ew Jersey may insist on a more demanding standard under its own Constitution." The majority in the instant case, however, in increasingly predictable fashion, chooses the path of least resistance, uncritically following the Court's analysis in *T.L.O.* under the federal constitution.

Unquestionably, as the United States Supreme Court recognized in *T.L.O.*, 469 U.S. at 338–339, 105 S.Ct. at 742, 83 L.Ed.2d at 732–33, students have legitimate expectations of privacy in the school setting:

> Although this Court may take notice of the difficulty of maintaining discipline in the public schools today, the situation is not so dire that students in school may claim no legitimate expectations of privacy.... Students at a minimum must bring to school not only the supplies needed for their studies, but also keys,

money, and the necessaries of personal hygiene and grooming. In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in connection with extra-curricular or recreational activities. In short, schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds.

The school locker is certainly another place in which such nondisruptive and highly personal items are stored. As one commentator has observed, "[A]part from the integrity of his own body, his locker is one of his few harbors of privacy within the school. It is the only place where he may be able to store what he needs to preserve as private—letters from a girl friend, applications for a job, poetry he is writing, books that may be ridiculed because they are too simple or too advanced, or dancing shoes he may be embarrassed to own." Buss, *The Fourth Amendment and Searches of Students in Public Schools*, 59 Iowa L.Rev. 739, 773 (1974); *see also State v. Engerud*, 94 N.J. 331, 348, 463 A.2d 934, 943 (1983) ("For the four years of high school, the school locker is a home away from home. In it the student stores the kind of personal 'effects' protected by the Fourth Amendment.")

Although the maintenance of order and discipline in the school obviously promotes a "thorough and efficient education," respect for the privacy of students, particularly in their sensitive and formative years, also promotes this fundamental interest. As the United States Supreme Court stated in *Board of Education v. Barnette*, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628, 1637 (1943):

> Boards of Education ... have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill

of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes.

A totalitarian school environment, although conducive to the maintenance of order and discipline, is certainly not conducive to a "thorough and efficient education."

In Syllabus Point 1 of *State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980), this Court held that, "Where a child is adjudicated delinquent for having committed an act which would be a crime if committed by an adult upon evidence which would not be admissible in a criminal trial, the delinquency adjudication must be reversed." Similarly, West Virginia Code § 45–5–1(d) (Supp.1985), governing procedures in delinquency proceedings, provides, in relevant part, that, "Except as herein modified, at all adjudicatory hearings, the rules of evidence applicable in criminal cases shall apply...."

Perhaps, at this point in constitutional history, "[t]he voice of one crying in the wilderness," Matthew 3:3, I would nevertheless reaffirm the fundamental principles firmly established by the framers of our constitution and for which they courageously struggled, and hold that evidence seized from a student's locker, in the absence of probable cause to believe that dangerous or disruptive contraband or evidence of criminality was present, although admissible in disciplinary proceedings, is inadmissible in criminal or delinquency proceedings under West Virginia Constitution art. III, § 6 and art. XII, § 1. This standard would both preserve the school's legitimate interest in maintaining order and discipline and the student's legitimate expectation of privacy in his or her locker. Furthermore, it would encourage the immediate involvement of law enforcement officials, who are better equipped to handle evidence of criminality, when there is probable cause to believe that a student has violated the law, as opposed to violations of school rules and regulations, which school personnel are better equipped at handling. This commonsense accommodation of the competing interests involved was adopted by the court in *Gordon J. v. Santa Ana Unified School District*, 162 Cal.App.3d 530, 542–44, 208 Cal.Rptr. 657, 665–67 (1984), which held, under the fourth amendment, that although the exclusionary rule is fully available in criminal prosecutions and juvenile proceedings with respect to evidence illegally obtained by school officials, it is inapplicable in school disciplinary proceedings. In this jurisdiction, our "thorough and efficient education" clause provides additional support for this workable rule.

I concur wholeheartedly with the remarks of Justice Stevens in his dissent to the majority's refusal to apply the probable cause standard in *T.L.O.*, 469 U.S. at 373–374, 105 S.Ct. at 760–61, 83 L.Ed.2d at 755–56:

Schools are places where we inculcate the values essential to the meaningful exercise of rights and responsibilities by a self-governing citizenry. If the Nation's students can be convicted through the use of arbitrary methods destructive of personal liberty, they cannot help but feel that they have been dealt with unfairly. The application of the exclusionary rule in criminal proceedings arising from illegal school searches makes an important statement to young people that "our society attaches serious consequences to a violation of constitutional rights," and that this is a principle of "liberty and justice for all." [Footnotes omitted].

Our schools, ultimately, are not only institutions of learning, but are microcosms of our culture and civilization. In an era of constant attack upon the "rule of law" as embodied in such fundamental constitutional principles as the fourth amendment's prohibition against unreasonable governmental intrusion into the privacy and security of its citizens, perhaps it is fitting that our children learn at a tender age that the struggle of our ancestors against the arbitrary exercise of the will of the Crown has become our struggle against the arbitrary exercise of the will of those who seek to

"balance" away as "mere platitudes" the fundamental constitutional rights for which those ancestors fought and died. In furtherance of such struggle, I must dissent.

MILLER, Chief Justice, concurring in part, and dissenting in part:

Although I have no quarrel with the "reasonable suspicion standard" adopted by the majority, as I believe this comports with the majority view elsewhere, I believe the evidence did not rise to this standard.

At best, the evidence in this case indicated that a friend of the defendant disclosed that prior to coming to school, he had consumed some beer at the defendant's home. There were no facts given to the school official that would indicate that the defendant kept beer or other alcoholic beverages in his school locker. From the record before us, the defendant had not been involved in any previous alcohol problem or for that matter any disciplinary problems on the school premises.

Thus, the only fact before the school authorities was an isolated admission by a friend of the defendant that he had stopped by the defendant's home on the way to school and had consumed a beer. To elevate these facts into a "reasonable suspicion" that the defendant had beer in his school locker is impossible in my view.

The United States Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), which framed the general standards adopted by the majority, made it clear that the reasonable suspicion standard must be based on the belief "that the student has violated or is violating either the law or the rules of the school." 469 U.S. at 343–344, 105 S.Ct. at 744, 83 L.Ed.2d at 735. It is difficult for me to see how the facts of this case could indicate a violation of the law on the part of the defendant and certainly no school regulation was involved because the incident occurred at home. The result would be different if the fellow student had obtained a beer from the defendant on the school premises.

The facts in *T.L.O.* illustrate the reasonable suspicion standard. There a student was smoking a cigarette in a school lavatory against school regulations. A teacher who observed the incident took her to the principal's office. When confronted by a school administrator with this fact, the student denied smoking and claimed that she did not smoke at all. The administrator demanded to see her purse and in going through it discovered a pack of cigarettes and upon removing the cigarette pack discovered marijuana. Clearly, the grounds for reasonable suspicion existed with the infraction of the school regulation against smoking which warranted the initial search.

A number of courts that have accepted school searches under the reasonable suspicion standard have required that there be shown some objective and articulable facts that give rise to the reasonable suspicion to justify a search. In *State v. D.T.W.*, 425 So.2d 1383, 1386 (Fla.Dist.Ct.App.1983), the court said school officials have "power to make an immediate, limited search, for contraband ... when a reasonable subjective suspicion supported by objective, articulable facts would lead a reasonably prudent person to suspect that these items are present." *See also Bellnier v. Lund*, 438 F.Supp. 47, 53 (N.D.N.Y.1977) (requiring "articulable facts which together provided reasonable grounds to search"); *T.A.O'B v. State*, 459 So.2d 1106 (Fla.Dist.Ct.App. 1984); *Rone v. Daviess County Bd. of Educ.*, 655 S.W.2d 28 (Ky.App.1983); *Doe v. State*, 88 N.M. 347, 352, 540 P.2d 827, 832 (App.Ct.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975); *State v. McKinnon*, 88 Wash.2d 75, 81, 558 P.2d 781, 784 (1977) (for reasonable suspicion, school authorities should consider "the probative value and reliability of the information used as a justification for the search"); *In re L.L.*, 90 Wis.2d 585, 601, 280 N.W.2d 343, 351 (Ct. App.1979).

In the present case, there were no articulable facts which would lead a reasonably prudent person to suspect the defendant had alcoholic beverages in his locker. The only evidence was that his friend had consumed a beer at the defendant's home before school. This information gave no indication that the defendant had alcoholic beverages in his locker.

Moreover, despite the majority's acknowledgment that "the search must be reasonable in terms of (1) the initial justification for the search and (2) the extent of the search conducted," Syllabus Point 3, in part, I have difficulty in finding the extent of the search reasonable. The only objective of the search would have been to discover the existence of alcoholic beverages in the defendant's locker. Yet, rather than pat down the defendant's jacket, the school administrator made a detailed examination into its pockets.

In *T.L.O.*, the United States Supreme Court was careful to analyze the scope of the search and concluded that the initial search for cigarettes in the purse was reasonable. It was during the course of this search that the marijuana was encountered.

A rather analogous situation existed in *T.A.O'B v. State, supra,* where the court found the search of the student's pockets for cigarettes permissible but not the search of his wallet. *See also M.M. v. Anker,* 607 F.2d 588 (2d Cir.1979); *Bellnier v. Lund, supra; In re W.,* 29 Cal.App.3d 777, 105 Cal.Rptr. 775 (1973).

For the foregoing reasons, I respectfully dissent.