Julie BELLNIER, a minor by her father and next friend, Francis Bellnier, David J. Leonti, a minor by his father and next friend, Victor A. Leonti, Sr., Plaintiffs,

v.

Gordon W. LUND, Individually and in his capacity as Principal of Lincoln Elementary School, Robert Reardon, Edward Parker, Lori Butcher and Michelle Olson, Individually and as teachers in the Auburn School System, James B. Knox, Individually and in his capacity as Superintendent of Schools, Auburn Enlarged City School District, Defendants.

No. 75–CV–237.

United States District Court,
N. D. New York.

July 11, 1977.

New York Civil Liberties Union, Alan H. Levine, New York City, of counsel; Clifford Forstadt, Syracuse, N. Y., of counsel, for plaintiffs.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., Kevin M. Reilly, Syracuse, N. Y., of counsel, for defendants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is an action whereby the plaintiff children, through their parents *comme* next friends, seek redress for an allegedly unlawful strip search claimed to have been conducted or condoned by defendants, all of whom are employed by the Auburn Enlarged City School District in one capacity or another. Plaintiffs seek legal, injunctive, and declaratory relief in their action, which is maintained under 42 U.S.C. §§ 1983 and 1985, as well as the Fourth, Ninth and Fourteenth Amendments of the United States Constitution. Jurisdiction is alleged to exist by virtue of 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Both parties have moved for a summary judgment, pursuant to F.R.C.P. Rule 56, with plaintiffs seeking a partial summary judgment, the issue of damages to be left for trial. A review of the pleadings, as supplemented by the affidavits of defendants Lund, Reardon, Parker, Butcher, and Knox, reveals that, with one minor exception which will not affect the outcome of the pending motion, there are no material issues of fact to be determined with respect to the question of defendants' liability. This case is therefore an appropriate one for a summary judgment. F.R.C.P. Rule 56.

On the morning of December 6, 1974, plaintiffs and their classmates, members of the fifth grade class at Auburn's Lincoln Elementary School, arrived at the classroom in their usual fashion. Each of the students entered the classroom and placed his outer garment in a coatroom located wholly within, and accessible only from, the classroom

itself. The teacher of the class, defendant Reardon, stood at or near the classroom door during this time while the student teacher, defendant Olson, remained inside the classroom. Once inside the room, no student left prior to the alleged search now the subject of this action.

Sometime that morning, and prior to the commencement of class, plaintiff Leonti complained to defendant Olson that he was missing $3.00 from his coat pocket. Plaintiff Leonti stated that he was sure that he had $4.00 when he arrived at school, showing defendant Reardon the four raffle ticket stubs indicating sales proceeds in the amount of $4.00, only $1.00 of which remained in Leonti's pocket.

An appeal by defendant Reardon to the class regarding knowledge of the missing money proved fruitless. Being aware of prior complaints from class members of missing money, lunches, and other items, and knowing that no one had left the classroom that morning, defendant Reardon commenced a search of the class, with the aid of fellow teachers and school officials, all of whom are named as defendants herein.

The outer garments hanging in the coatroom were searched initially. The students were then asked to empty their pockets and remove their shoes. A search of those items failed to reveal the missing money. The class members were then taken to their respective restrooms, the girls to the girls' room by defendants Olson and Butcher, and the boys to the boys' room by defendants Reardon, Parker, and Lund. The students were there ordered to strip down to their undergarments, and their clothes were searched.[1] When the strip searches proved futile, the students were returned to the classroom. There, a search was conducted of their desks, books, and once again of their coats.

The entire search lasted approximately two hours, with the strip searches taking about fifteen minutes. The missing money was never located.

Defendant Knox was employed in December of 1974 by the Auburn Enlarged City School District as the Superintendent of Schools. Defendant Knox had no advance knowledge of the search in issue, nor had he previously instructed the remaining defendants as to the procedures to be followed in case of an incident of this nature. Defendant Knox's sole participation in the incident occurred on December 9, 1974, when, while speaking at a formal meeting of the School Board, he defended the legality of the search in issue.

## I. STATE ACTION

■ It is clear that the major thrust of plaintiffs' cause of action is based upon 42 U.S.C. § 1983,[2] inasmuch as there is no allegation of racial or other class-based invidiously discriminatory animus behind the defendant conspirators' actions, nor is there alleged the existence of a conspiracy, both of which are required in order to state a cause of action under 42 U.S.C. § 1985. *Waits v. McGowan*, 516 F.2d 203 (3d Cir. 1975). Section 1983 requires a showing of action "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory" to support a cause of action. This element, loosely termed as "state action", is highly amorphous, and is generally determined on a case-by-case basis after an analysis of the facts involved. *Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974). State action is generally found to exist when what is involved is the exercise of power possessed only because the wrongdoer is clothed with the authority of state

1. There is some dispute as to whether some of the students were then subjected to a "pat down" by the defendants. Resolution of this question, however, is not necessary for purposes of this motion.

2. "Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress" 42 U.S.C. § 1983.

law. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), citing *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); see also *Brooks v. Flagg Brothers, Inc.*, 553 F.2d 764 (2d Cir. 1977). As the Supreme Court has stated with reference to the Equal Protection clause of the Fourteenth Amendment, though equally applicable to the Due Process clause, state action exists when

> [t]he state has so far insinuated itself into a position of interdependence with [defendants' lessee] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so "purely private" as to fall within the scope of the Fourteenth Amendment.

*Burton v. Wilmington Pkg. Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). As a corollary to the state action rule, it is generally stated that to prove a cause of action under § 1983, one need not show that the constitutional or statutory infringement complained of is supported by state law, as long as there is some nexus between the state involvement and the deprivation. See, e. g., *McCabe v. Nassau County Medical Center*, 453 F.2d 698 (2d Cir. 1971); see also *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D.N.Y.1974), aff'd, 506 F.2d 1395 (2d Cir. 1974).

■ While it would seem self-evident that the actions of a teacher or school official employed by a public municipality board of education would constitute state action under *Monroe v. Pape, supra*, this has not been a universally held notion among the various federal courts.[3] Compare *Palacios v. Foltz*, 441 F.2d 1196 (10th Cir. 1971), with *Warren v. National Ass'n of*

*Sec. School Principals*, 375 F.Supp. 1043 (N.D.Tex.1974), and *Lopez v. Williams*, 372 F.Supp. 1279 (S.D.Ohio, E.D.1973), aff'd, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); also, cf. *Baltic Ind. Sch. Dist. v. South Dakota H. Sch. Act. Ass'n*, 362 F.Supp. 780 (D.S.Dak.S.D.1973). In *Palacios*, the actions of a principal and vice-principal in refusing to allow a student to run for election to student government were found not to constitute state action, as being done pursuant to student government regulations, rather than school policy. Cf. *Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In *Lopez*, suspension of students by a principal was found to constitute state action where the procedures used and challenged on Due Process grounds were expressly provided for in the Ohio Constitution, and state statutes and corresponding regulations. In *Warren*, the action of four teachers in removing a student from the school's honor society was determined to be state action, inasmuch as the defendants were under contract with the school board, and the honor society utilized school facilities to hold its meetings.

The conclusion reached in the *Warren* case, that of finding state action, seems to be the more logical one, especially when the *Monroe-Burton* principles are applied to the facts of this case. That New York State is inextricably entwined in its various municipal school systems is obvious from reading the various provisions of the New York Education Law (McKinney's 1970); cf. *Brooks v. Flagg Brothers, Inc., supra*. Most notable, in this regard, is the compulsory education provision, Education Law § 3205, and its companion sections. See, e. g., Edu-

---

**3.** In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), an action brought under 42 U.S.C. §§ 1981 et seq. challenging on Due Process and Cruel and Unusual Punishment grounds, the use of corporal punishment by school officials, the Court seemingly assumed *ab initio* that the actions complained of constituted "state action". However, in that case, the corporal punishment was specifically authorized by both state law and a local school board regulation. That this was the basis for finding state action is clear from a portion of

the Court's opinion wherein it was stated that liability exists "at least where school authorities, *acting under color of state law*, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain . . . ." *Id.* at 674, 97 S.Ct. at 1414 (Emphasis Added). Otherwise, the phrase "acting under color of state law" would be a mere surplusage, since it was previously specified that the acts of school officials were in issue.

cation Law §§ 3202 and 3210. The regulation of teachers by the state is equally persuasive as evidence of state action. See, e. g., Education Law §§ 3001–3020–a. Perhaps the most telling factor, especially with respect to this case, is Education Law § 3028, which requires that a board of education indemnify a teacher for all costs and attorneys' fees resulting from an action, civil or criminal, growing out of an attempt to discipline a student. It is clear from these provisions that the state has sufficiently interjected itself into the public school systems for this Court to find state action in the present case. *Perez v. Sugarman, supra*; cf. *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974); see also *State v. Baccino*, 282 A.2d 869 (Del.Sup.1971) (dictum).

## II. FOURTH AMENDMENT

### A. Applicability

There can be no doubt that, as the plaintiffs state, the notion that an infant student sheds all of his constitutional rights when he enters the school house door is steadily being dispelled by the courts. Buss, *The Fourth Amendment and Searches of Students in Public Schools*, 59 Iowa L.Rev. 739 (1974); see, e. g., *Tinker v. Des Moines School District, supra* (First Amendment), and *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (Procedural Due Process). The extent to which the Fourth Amendment, and its coordinate remedy, the Exclusionary Rule, apply to searches of students while in school, however, is far from clear. *State v. Young*, 234 Ga. 488, 216 S.E.2d 586 (1975). The cases which have dealt with the issue have reached diverse results, relying upon various theories, which can be generally placed into the following categories: 1) the Fourth Amendment does not apply, as the school official acted *in loco parentis* (private search); *People v. Stewart*, 63 Misc.2d 601, 313 N.Y.S.2d 253 (N.Y.Co. 1970); *In re G.*, 11 Cal.App.3d 1193, 90 Cal.Rptr. 361 (Ct. of App., 1st Dist. 1970); *Mercer v. State*, 450 S.W.2d 715 (Tex.Civ.App.1970); *In re Donaldson*, 269 Cal.App.2d 509, 75 Cal.Rptr. 220 (1969); 2) the Fourth Amendment applies, but the Exclusionary Rule does not; *United States v. Coles*, 302 F.Supp. 99 (D.Me., N.D.1969); *State v. Wingerd*, 40 Ohio App.2d 236, 318 N.E.2d 866 (1974) (dictum); *State v. Mora*, 307 So.2d 317 (La.S.Ct. 1975) (dissent); *State v. Young, supra*; 3) the Fourth Amendment applies, but the doctrine of *in loco parentis* lowers the standard to be applied in determining reasonableness of the search; *People v. Singletary*, 37 N.Y.2d 310, 372 N.Y.S.2d 68, 333 N.E.2d 369 (1975); *People v. D.*, 34 N.Y.2d 483, 358 N.Y.S.2d 403, 315 N.E.2d 466 (1974); *In re W.*, 29 Cal.App.3d 777, 105 Cal.Rptr. 775 (Ct. of App., 1st Dist. 1973); *People v. Jackson*, 65 Misc.2d 909, 319 N.Y.S.2d 731 (App. Term, 1st Dept. 1971) aff'd, 30 N.Y.2d 734, 333 N.Y.S.2d 167, 284 N.E.2d 153 (1972); *In re C.*, 26 Cal.App.3d 320, 102 Cal.Rptr. 682 (Ct. of App., 4th Dist. 1972); *In re G. C.*, 121 N.J.Super. 108, 296 A.2d 102 (1972); see also Shaw, Admissibility, in Criminal Cases, of Evidence Obtained by Search Conducted by School Official or Teacher, 49 A.L.R.3d 978; 4) the Fourth Amendment applies in full, requiring a finding of probable cause in order for a search to be reasonable. *State v. Mora, supra*.

There are few federal cases dealing with the subject of student strip searches, and unfortunately those cases are all distinguishable from that at bar. The cases of *Picha v. Wielgos*, 410 F.Supp. 1214 (N.D.Ill., E.D.1976), and *Potts v. Wright*, 357 F.Supp. 215 (E.D.Pa.1976), both § 1983 actions involving student searches, and cited by both parties in their memoranda, clearly hinged in their holdings upon police involvement in the searches, a factor not present in this case. As stated by the Court in *Potts*,

> If the school officials have absolutely no authority under state law to search any individual, their searching of students without the aid of the police would be a battery or possibly an invasion of the right of privacy under state law, and would not constitute a civil rights violation.

*Potts v. Wright, supra* at 219; see also *Picha v. Willgos, supra* at 1220. In *Moore v. Student Affairs Committee of Troy State University*, 284 F.Supp. 725 (M.D.Ala.1968), a case involving a dormitory room search at a state university, a balance was struck

between the Fourth Amendment and the responsibilities of the university with regard to maintaining discipline, resulting in a lesser standard than probable cause being applied to determine the reasonableness of the search. Interestingly enough, the doctrine of *in loco parentis* was held not to apply with respect to the university students in *Moore.*

 This Court finds the reasoning utilized in *Moore v. Student Affairs Committee of Troy State University, supra,* and *State v. Young, supra,* that of applying the Fourth Amendment but with a lesser standard than probable cause with respect to student searches, to be the more persuasive. See also *State v. Baccino, supra.* Whether or not the Exclusionary Rule is coextensive with the Fourth Amendment, and hence applicable in a criminal action based upon a search such as that now in issue, is subject to considerable speculation. See, e. g., Buss, *The Fourth Amendment and Searches of Students in Public Schools, supra* at fn. 20 pp. 741–742; see also *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (opinions of Justices Clark, Black and Harlan). Nevertheless, it is clear that in imposing the Exclusionary Rule upon the states as a remedial measure, the Court in *Mapp* did not by any means intend to deprive a person subjected to an unlawful search or seizure of his civil remedies, among them being recourse to a civil rights action under 42 U.S.C. § 1983. Thus, in *State v. Young, supra,* a well reasoned opinion, the Georgia Supreme Court found three categories of searches, for purposes of the Fourth Amendment: 1) wholly private searches, with no Fourth Amendment applicability; 2) state action, but no involvement of law enforcement agents, so that the Fourth Amendment applies, but not the Exclusionary Rule; and 3) search by law enforcement agents, to which both the Fourth Amendment and the Exclusionary Rule apply *in toto.* The present case clearly falls within the second enumerated category, for which the *Young* Court suggests that the proper remedy is a civil rights or tort action, rather than exclusion of evidence so obtained from introduction at a criminal trial. Accordingly, this Court

holds that the defendants may be held liable under 42 U.S.C. § 1983 if the search is found to have violated the plaintiffs' Fourth Amendment rights.

**B. Standard**

 In finding that the Fourth Amendment does apply in this case, this Court does not mean to imply that a showing of probable cause is necessary in order to uphold the search as reasonable. In analyzing the search to determine reasonableness, the Court must weigh the danger of the conduct, evidence of which is sought, against the students' right of privacy and the need to protect them from the humiliation and psychological harms associated with such a search. *People v. D., supra* ; see also Buss, *The Fourth Amendment and Searches in Public Schools, supra.* In doing so the Court must take into account the special duties and responsibilities imposed upon school officials to provide a safe atmosphere for a student to develop, the attendant limited powers which the school officials possess *in loco parentis* to effectuate the maintenance of proper discipline. *People v. D., supra* ; see also 1 Blackstone's Commentaries § 453 (18th Ed. 1832).

 This Court holds that, while there need not be a showing of probable cause in a case such as this, there must be demonstrated the existence of some articulable facts which together provided reasonable grounds to search the students, and that the search must have been in furtherance of a legitimate purpose with respect to which school officials are empowered to act, such as the maintenance of discipline or the detection and punishment of misconduct. Cf. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Singletary, supra* ; *People v. D., supra.* In making such an analysis, some factors which warrant consideration are: 1) the child's age; 2) the child's history and record in school; 3) the seriousness and prevalence of the problem to which the search is directed; and 4) the exigency requiring an immediate warrantless search. *People v. D., supra.*

 On balance, the facts of this case mitigate against the validity of the search

in issue. It is entirely possible that there was reasonable suspicion, and even probable cause, based upon the facts, to believe that *someone* in the classroom has possession of the stolen money. There were no facts, however, which allowed the officials to particularize with respect to which students might possess the money, something which has time and again, with exceptions not relevant to this case, been found to be necessary to a reasonable search under the Fourth Amendment. See, e. g., *Terry v. Ohio, supra.* For this reason, the search must be held to have been invalid under the Fourth Amendment, there being no reasonable suspicion to believe that each student searched possessed contraband or evidence of a crime.

The Court is not unmindful of the dilemma which confronts school officials in a situation such as this. However, in view of the relatively slight danger of the conduct involved (as opposed to drug possession, for example), the extent of the search, and the age of the students involved, this Court cannot in good conscience say that the search undertaken was reasonable. As was appropriately noted by the New York Court of Appeals in a unanimous opinion,

> . . . although the necessities for a public school search may be greater than one for outside the school, the psychological damage that would be risked on sensitive children by random search insufficiently justified by the necessities is not tolerable.

*People v. D.,* 34 N.Y.2d 490, 358 N.Y.S.2d 410, 315 N.E.2d 471.

III. RELIEF

The plaintiffs have prayed for three forms of relief, seeking a declaratory judgment, damages, and an injunction.

A. Damages

 It is well settled that school officials possess a qualified good faith immunity with respect to acts performed within the course of their duties. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), reh. den., 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975); Note, *School and School Officials,* 78 W.Va.L.Rev. 259 (1975). The boundaries of that immunity were defined in *Wood* as containing both objective and subjective elements. That is to say, immunity exists if the official acts in good faith and not in ignorance or disregard of settled indisputable principles of law. *Wood v. Strickland, supra* at 321, 95 S.Ct. 992. As was stated by the Court in *Wood,*

> As with executive officers faced with instances of civil disorder, school officials, confronted with student behavior causing or threatening disruption, also have an "obvious need for prompt action, and decisions must be made in reliance on factual information supplied by others (citations omitted)."

> \* \* \* \* \* \*

> We think there must be a degree of immunity if the work of the schools is to go forward; and, however worded, the immunity must be such that public school officials understand that action taken in good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity.

> \* \* \* \* \* \*

> Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are "charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S. 547 at 557, 87 S.Ct. 1213, 18 L.Ed.2d 288. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.

*Wood v. Strickland, supra* at 319–322, 95 S.Ct. at 999–1001; see also *Picha v. Wielgos, supra.*

It is clear that the defendants are entitled to a summary judgment on the issue of monetary damages under the test in *Wood.* The plaintiffs have failed to allege in their Complaint that the actions were not taken in good faith. Moreover, the fact that the law is markedly unsettled on the issue of student searches in schools is aptly illustrated by the diversity of results and theories contained in the cases cited earlier in this opinion. Therefore, the defendants are immune from liability for compensatory and punitive damages arising out of the acts complained of.[4]

### B. Declaratory Relief

This Court has previously stated that the search at bar violated the plaintiffs' constitutional rights. The plaintiffs are therefore entitled to a summary judgment to that effect, except with respect to defendant Knox. 28 U.S.C. § 2201.

### C. Injunction

The motion for a permanent injunction should be denied, as the issue as between these parties is moot. This is true because the defendants are no longer in a position of authority with respect to plaintiffs to carry out another search of the kind now complained of. In any event, the Court sees no reason for enjoining conduct which has heretofore been declared as unlawful. Such a request is akin to a prayer for injunctive relief against a criminal act. Compare *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The unnecessary duplication of sanctions is evident in either case.

### IV. SUMMARY JUDGMENT WITH RESPECT TO DEFENDANT KNOX

Defendant Knox, who in December of 1974, was the Superintendent of Schools of the Auburn Enlarged City School District, has moved for a summary judgment in his favor. In support of his motion, he has submitted an affidavit in which he states that he had no prior knowledge of, nor participation in, the search in issue. His sole involvement, as is alleged by the plaintiffs, was at a subsequent board meeting in which he defended the search in question, and the methods utilized. The Court finds this utterly insufficient to hold defendant Knox accountable under 42 U.S.C. § 1983 in an action for declaratory judgment and damages. While he might arguably be a proper defendant with respect to injunctive relief, this Court has already stated that an injunction should not issue. Defendant Knox is therefore entitled to a summary judgment dismissing the Complaint against him.

It is hereby so ordered.

---

4. The Supreme Court has recently agreed to hear a case involving the issue of damages for the actions of a teacher taken during the course of his duties. *Carey v. Piphus*, 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 355 (1977). This Court nevertheless adheres to the view that the defendant teachers are immune from these damage claims under *Wood v. Strickland, supra.*