433 S.E.2d 41

**STATE of West Virginia ex rel. Cathy GALFORD, Petitioner Below, Appellee,**

v.

**MARK ANTHONY B., a Juvenile, and Bonnie L.B., His Mother, Respondents Below,**

Mark Anthony B., a Juvenile, Appellant.

No. 21254.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1993.

Decided April 23, 1993.

Dissenting Opinion by Justice Neely Aug. 12, 1993.

Barry L. Koerber, Asst. Atty. Gen., Charleston, for appellee.

Martin V. Saffer, Marlinton, for appellant.

BROTHERTON, Justice:

In this case, we are asked to rule on the constitutionality of a school principal's strip search of a student who was suspected of stealing money from a teacher's purse.

The appellant, Mark A.B., was a fourteen-year-old eighth grade student at Marlinton Middle School in Pocahontas County, West Virginia. On January 22, 1992, teacher Cathy Galford discovered that $100 in cash was missing from her purse, which she had placed under her desk during a period of the school day when her classroom was empty.

Galford reported the theft, and the incident was investigated by school social worker John Snyder. Snyder first called a male student other than the appellant into his office. Snyder described him as "one student in particular at Marlinton Middle School that has had a history of taking things that aren't his." After talking with this student, Snyder asked that he turn his pockets and socks inside out, and he also felt his pants legs and shirt. Snyder states that he "[d]idn't ask him to strip. But I didn't find any money on him."

Soon thereafter, Snyder learned that the appellant had been assigned to help the janitor with minor duties such as emptying trash cans and pencil sharpeners, and that it was likely he had been in Galford's classroom alone. Snyder next called the appellant into his office. The appellant admitted

that he had been in the classroom by himself but denied that he took the money. Snyder also asked the appellant to pull out his pockets and roll down his socks so that he could see all the areas of the appellant's outer clothing where money might have been concealed. Snyder reported to the school principal, Tom Sanders, that he found nothing, and concluded that "[the money] is not anywhere unless it's in his underwear."

The principal then took the appellant into the boy's bathroom and looked in his pockets and socks.[1] Sanders also asked the appellant to take off his pants, and the appellant lowered them to his knees. Sanders then asked him to pull his underwear open in the front and back. The missing $100 was in the back of the appellant's underwear.

After the principal seized the evidence, the appellant admitted that he took the $100 from Galford's purse because he needed spending money for a trip home the following weekend. Sanders accompanied the appellant when he returned the money to Galford and apologized for taking it.

Galford initiated criminal proceedings against the appellant on February 6, 1992, seeking to have him declared a delinquent child pursuant to W.Va.Code § 49–1–4(1) (1992). On April 30, 1992, the lower court denied the appellant's motion to suppress the evidence which was obtained as a result of the strip search and accepted his guilty plea to the petit larceny charge. The appellant was ruled delinquent and directed to undergo evaluation at the Industrial Home for Youth in Salem, West Virginia, in order to aid in determining an appropriate sentence.

Because of earlier theft-related convictions, the appellant was denied probation. On June 1, 1992, he was sentenced to one year in the West Virginia Department of Corrections. The court subsequently suspended the sentence, placed the appellant on probation for eighteen months, and ordered him to remain in the custody of the West Virginia Department of Human Services.

The appellant now argues that the lower court erred in denying his motion to suppress in its April 30, 1992, order. On appeal, the appellant maintains that the strip search conducted by the school principal was "excessively intrusive" and violated constitutional rights guaranteed to him by the Fourth Amendment of the United States Constitution and Article III, Section 6 of the West Virginia Constitution.[2]

In West Virginia, the leading case on the issue of school searches addresses a student's expectation of privacy as it relates to the student's locker and possessions contained therein. In *State v. Joseph T.*, 175 W.Va. 598, 336 S.E.2d 728 (1985), we held that because an assistant principal had *reasonable grounds* for suspecting that a student's locker contained an alcoholic beverage in violation of school rules, a warrantless search of the locker which uncovered marijuana cigarettes did not constitute a violation of the student's constitutional right to security against unreasonable searches and seizures.

This Court's ruling in *Joseph T.* followed the reasoning set forth by the United States Supreme Court in its landmark but controversial decision effecting the Fourth Amendment rights of students, *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720, 734 (1985), wherein the Court stated that "school officials need not obtain a warrant before searching a student who is under their authority."

In *T.L.O.*, a fourteen-year-old student was suspected of smoking cigarettes, a minor infraction of school rules. An assistant vice-principal initially searched the student's purse for cigarettes. However, he found cigarette rolling papers, which

1. The school principal would have been better advised to have at least one other male witness present when the search occurred.

2. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause...." The same protections are provided by Article III, Section 6 of the Constitution of West Virginia.

caused him to then extend his search to a zippered compartment in the purse, where he found marijuana, drug paraphernalia, and evidence linking the student to drug dealing. The Court upheld this as a valid search, finding that under the circumstances, it was not unreasonable in scope.

The Court recognized the need to maintain security and order in the schools and addressed how to "strike the balance between the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place." *Id.* at 340, 105 S.Ct. at 742. First, the Court said it was evident that "the school setting requires some easing of the restrictions to which searches by public authorities are usually subject. The warrant requirement, in particular, is unsuited to the school environment." *Id.* The Court determined that "requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.*

Dispensing with the notion that a reasonable search is a search conducted upon probable cause to believe that a law has been broken, the *T.L.O.* Court also decided that "[t]he school setting also requires some modification of the level of suspicion of illicit activity needed to justify a search." 469 U.S. at 340, 105 S.Ct. at 742. The Court explained that "[w]here a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not hesitated to adopt such a standard." *T.L.O., Id.*

We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.

*Id.*

Thus, in *T.L.O.* the United States Supreme Court developed the following analysis for determining the reasonableness of warrantless student searches conducted by school officials:[3] (1) the search must be "justified in its inception," meaning that teachers and administrators can search a student only if "there are *reasonable grounds* for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school;" and (2) once properly initiated, the *scope of the search* would be defined by the reasonableness of the methods used in the context of the objectives of the search, the age and sex of the student, and the nature of the suspected infraction. *Id.* at 341–42, 105 S.Ct. at 742–43.

In adopting this reasonableness standard, the Court expressed the hope that "[b]y focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense." *T.L.O.*, 469 U.S. at 343, 105 S.Ct. at 743. However, the Court cautioned that "[a]t the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools." *Id.*

---

**3.** The *T.L.O.* Court did not discuss the standard to be used in cases in which law enforcement officers participate in school searches. "The Supreme Court expressly indicated that *T.L.O.*'s 'reasonable grounds' criterion was limited to searches carried out by 'school authorities acting alone and on their own authority.'" 469 U.S. at 341 n. 7, 105 S.Ct. at 743 n. 7. *See* J.M. Sanchez, *Expelling the Fourth Amendment from American Schools: Students' Rights Six Years After T.L.O.,* 21 J.L. & Educ. 381, 399 (1992).

■ In the case now before us, the school officials clearly had reasonable grounds for focusing their suspicions upon the appellant. His access to the empty classroom and the fact that he was serving a two-year probation term for attempted burglary combined to create a reasonable and individualized suspicion that the appellant had taken the missing money. Thus, we find that the first prong of the *T.L.O.* analysis was satisfied, as there was an initial justification for a search.

■ However, we are troubled by the scope of this particular search, and question whether it could ever be described as reasonable under the circumstances. In syllabus point 2 of *Joseph T.*, we emphasized that "[p]ublic school students in West Virginia are entitled under *U.S. Const.* amend. IV and *W.Va. Const.* art. III, § 6, to security against unreasonable searches and seizures conducted in the schools by school principals, teachers and other school authorities." In addition, in syllabus point 3, we expounded upon the "reasonableness" standard delineated by the United States Supreme Court in *T.L.O.:*

> In determining whether a warrantless search concerning a public school student conducted by school authorities is reasonable under *U.S. Const.* amend. IV and *W.Va. Const.* art. III, § 6, in the context of delinquency or criminal proceedings instituted against the student, the search is to be assessed in view not only of the rights of the public school student but also in view of the need of this State's educational system to prevent disruptive or illegal conduct by public school students; in particular, the search must be reasonable in terms of (1) the initial justification for the search and (2) the extent of the search conducted; the initial justification for the search is determined by the 'reasonable suspicion standard' (a standard less exacting than 'probable

cause') under which a search is justified where school authorities have reasonable grounds for suspecting that the search will reveal evidence that the student violated the rules of the school or the law; the extent of the search conducted is reasonable when reasonably related to the objective of the search and not excessively intrusive to the student.

In this case, then, we must next determine whether the principal's strip search of the appellant was an "excessively intrusive" search of a student in the school setting. We are necessarily guided to some degree by the United States Supreme Court's analysis in *T.L.O.* regarding a student's expectations of privacy. However, we point out that the United States Supreme Court has never decided a case which involved a strip search of students, nor did the *T.L.O.* Court indicate whether its reasonableness standard would apply to strip searches of students.[4]

A strip search involves a visual inspection of an individual's body, including areas of the body which are usually hidden by undergarments.[5] In this case, the appellant argues that he was subjected to an "excessively intrusive strip search." However, the State maintains that the search was not arbitrary or malicious, and was "performed in the furtherance of Sanders' duty to maintain an educational environment as free from crime as possible. Under the circumstances, Sanders' search was not excessively intrusive." The State urges this Court to adopt a standard which would permit strip searches of students in limited circumstances, such as when it is likely that a student has concealed a weapon, drug paraphernalia, or evidence of a theft upon their person.

In support of this argument, the State cites two cases in which courts upheld student strip searches by school personnel.

---

**4.** For a discussion of the limits of the *T.L.O.* decision, *see* Stuart C. Berman, Note, *Student Fourth Amendment Rights: Defining the Scope of the T.L.O. School–Search Exception,* 66 N.Y.U.L.Rev. 1077, 1095–1099 (1991). The author states that "the Court's schoolhouse-based focus, its deliberate omissions, and its interest-dependent knowledge, support the conclusion

that *T.L.O.* is best read narrowly...." *Id.* at 1097.

**5.** *See* Steven F. Shatz, Molly Donovan, and Jeanne Hong, *The Strip Search of Children and the Fourth Amendment,* 26 Univ.S.F.L.Rev. 1 (1991).

First, in *Rone By and Through Payne v. Daviess County Board of Education*, 655 S.W.2d 28 (Ky.App.1983), a fifteen-year-old male student was searched by the school principal in the presence of two other male school officials. On the day before the search, the student had distributed marijuana to two female students on the school bus. The student was suspected of possessing marijuana after he admitted growing marijuana, smoking it frequently, and passing it to another student. The school officials asked the student to lower his pants and underwear to his thighs, and the student complied.

In a recitation of the material facts which were not disputed by the parties, the court pointed out that "[a]lthough the appellant was requested during the search to lower both his trousers and undershorts, those articles of his clothing were never removed. Additionally, the appellant was never offensively touched during any part of the search. The only clothing completely removed from the appellant was his jacket and shoes." *Id.* at 30.

The court also noted that underwear is a "prime hiding place" for controlled substances and found it significant that the search "involved a single student for a single specific reason." *Id.* Satisfied that the search, which was "conducted by school officials with no law enforcement officials present, met the test of 'reasonable suspicion' established by courts in other jurisdictions," the Court of Appeals of Kentucky upheld it as valid:

> Here, there is no evidence of either arbitrariness or maliciousness on the part of the school officials in searching the appellant. On the contrary, the school officials had a number of "articulable facts" which, when taken together, provided reasonable grounds for the search.

*Id.* at 30–31.

Among the particularly relevant "articulable facts" referred to by the Court were "the appellant's age; his history and record within the school system—namely passing prescription drugs to other students and passing marijuana to two students the day before the search; and the appellant's own admission that he had possessed, passed, and smoked marijuana." *Id.* at 31. Given these circumstances, the Court stated that "we cannot say that the officials lacked the requisite 'reasonable suspicion.' " *Id.* "Taken as a whole, their actions were responsible and sensible as they sought to safeguard the welfare of all the children within the school system and they are to be commended in their attempt to prevent the appellant from entering the criminal justice system." *Id.*

A second case relied upon by the State is *Williams by Williams v. Ellington*, 936 F.2d 881 (6th Cir.1991), in which the strip search of a female public high school student by female school officials was declared valid. Based upon a conversation with a concerned parent and talks with various students, school officials had reason to believe that the plaintiff, Angela Williams, and another student named Michelle possessed a clear glass vial containing a "white powdery substance." An investigation continued for several days, and eventually the two students were taken to the principal's office. While there, Michelle produced a small brown vial containing "rush," a volatile substance that can be purchased over the counter.[6]

Because this brown vial did not match the one described, school officials conducted locker searches, as well as searches of the girls' books and purses, all of which produced no evidence of drugs. Finally, Maxine Easley, a female assistant principal, was asked to take Williams, the girl upon whom the most suspicion was focused, and search her person while in the presence of a female secretary.

As the search began, Williams was asked to empty her pockets, and she did so. Then she was asked to remove her t-shirt. Although she apparently hesitated and appeared nervous, Williams complied after the request was repeated. Next, she low-

---

6. Possession of "rush" is legal, but inhalation of it is illegal under Kentucky law. Ky.Rev.Stat. 217.900.

ered her jeans to her knees. Williams also testified that Easley pulled the elastic of her underpants to see if anything would fall out. Easley disputed this contention by Williams.[7] Williams also removed her shoes and socks. No evidence of drugs was found as a result of this search.

Williams' father filed a complaint with the school board after the incident. The board found that a reasonable suspicion existed under the school's search and seizure policy to justify the actions taken by school officials. Next, Williams and her father filed suit against the school district, principal, assistant principals, superintendent, and individual board members pursuant to 42 U.S.C. § 1983, seeking damages, as well as injunctive and declaratory relief.

The district court found in favor of the defendants, determining that Williams had not established that the search was unconstitutional as a matter of law. The district court granted the defendants' motion for summary judgment and held that the defendants were entitled to qualified immunity from the suit, dismissing all of Williams' claims. On appeal, Williams' challenged only the district court's ruling on the defendants' motion for summary judgment.

Upon review, the Sixth Circuit Court of Appeals engaged in a lengthy discussion of *T.L.O.*'s reasonableness standard and concluded that the search itself was not unreasonable at its inception. The court found that "[d]efendants were not unreasonable, in light of the item sought (a small vial containing suspected narcotics), in conducting a search so personally intrusive in nature." 936 F.2d at 887. Further, the court explained why it felt that the scope of the search was not unreasonable:

> Nor was the scope of the search unreasonable, taking into account the size of the clear, glass vial that was sought and the suspected nature of the white powdery substance contained in the vial. After Williams' locker and purse were searched, it was reasonable for Ellington to suspect the girl may be concealing the

contraband on her person. Further justification for the search is the close parallel between the particular facts of the present case and the facts surrounding *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In *T.L.O.*, when the Vice Principal searched the student's purse for cigarettes, discovery of rolling papers created reasonable suspicion that the purse contained marijuana and therefore warranted an extended search. Like *T.L.O.*, after Ellington's initial suspicions were raised, new evidence appeared to justify the extended level of intrusion. In questioning the girls, Ellington already possessed reasonable suspicion to believe the students were concealing evidence of illegal activity; yet Michelle's production of the vial containing "rush," a substance of which inhalation is prohibited by law, warranted further investigation.

*Id.* The court also noted that in *T.L.O.*, the United States Supreme Court:

> ... was careful to protect a school official's right to make discretionary decisions in light of the knowledge and experience of the educator and the information presented to him or her at the time such decision was made. Like police officers, school officials need discretionary authority to function with great efficiency and speed in certain situations, so long as these decisions are consistent with certain constitutional safeguards. To question an official's every decision with the benefit of hindsight would undermine the authority necessary to ensure the safety and order of our schools.

*Id.* at 886.

In advancing its argument in the case now before us, the State attempts to distinguish both *Rone* and *Williams* from *Bellnier v. Lund*, 438 F.Supp. 47 (N.D.N.Y. 1977), a strip search case in which the searches were deemed unconstitutional because they were conducted arbitrarily and were unreasonable in scope.

In *Bellnier*, a fifth-grade student discovered that three dollars was missing from

---

**7.** The district court found this discrepancy immaterial for summary judgment purposes. The Sixth Circuit stated that "as troubling as that conclusion may be, the veritable inconsistency need not be addressed in light of the rationale set forth below." 936 F.2d at 883.

his coat pocket. Other garments in the coatroom were searched, and students were asked to empty their pockets and take off their shoes. The money was not found, and class members were then taken to their respective restrooms by various school teachers and officials. The students were told to strip down to their undergarments, and their clothes were searched.[8] When these strip searches failed to uncover the money, the students returned to the classroom, where their desks, books, and coats were searched once again. The missing three dollars was never found.

Analyzing the reasonableness of the search, the *Bellnier* court concluded that:

> It is entirely possible that there was reasonable suspicion, and even probable cause, based upon the facts, to believe that *someone* in the classroom has possession of the stolen money. There were no facts, however, which allowed the officials to particularize with respect to which students might possess the money, something which has time and again, with exceptions not relevant to this case, been found to be necessary to a reasonable search under the Fourth Amendment. See, e.g., *Terry v. Ohio, supra.* For this reason, the search must be held to have been invalid under the Fourth Amendment.

438 F.Supp. at 54. Thus, the court invalidated the search, concluding that there was "no reasonable suspicion to believe that each student search possessed contraband or evidence of a crime." *Id.*

> Significantly, the court then noted that: The Court is not unmindful of the dilemma which confronts schools officials in a situation such as this. However, in view of the relatively slight danger of the conduct involved (as opposed to drug possession, for example), the extent of the search, and the age of the students involved, this Court cannot in good conscience say that the search undertaken was reasonable.

*Id.*

The strip searches at issue in *Rone, Williams,* and *Bellnier* are somewhat in-

structive because all three contain elements that are present in the case now before us. For example, in the drug cases, *Rone* and *Williams,* individualized suspicion had been cast upon the student who was searched, as it was on the appellant herein. Thus, in both those cases, the school officials had reasonable grounds for conducting a search of the students.

However, the existence of reasonable grounds for conducting a search of the student was not the only element the courts weighed when evaluating the reasonableness of the searches in *Rone* and *Williams.* In both instances, the courts considered the possible danger to other students that could result from the suspected students' conduct and ultimately determined that the scope of the search was not too intrusive in light of the need to safeguard students from drugs.

No individualized suspicion was present in *Bellnier,* and the strip search of the fifth grade class was invalidated for that reason. However, the object of the search was the same in *Bellnier* as it is in this case—missing money—although the missing amount was more significant in this case. Nonetheless, the *Bellnier* court referred to the "relatively slight danger of the conduct involved" in relation to the extent of the search when concluding that the search was unreasonable. *Id.* at 54. We find this element to be a significant point of divergence in cases involving student searches.

At some point, a line must be drawn which imposes limits upon how intrusive a student search can be. We certainly cannot imagine ever condoning a search that is any more physically intrusive than the one now before us. Looking inside of a student's underwear is an invasion of personal privacy that should not be equated with searching a student's locker or other personal possessions.

The *T.L.O.* Court obviously intended for there to be constraints on how far a search could ultimately extend, even when there are "reasonable grounds" and/or an indi-

---

8. Whether or not the students were "patted  down" remained in dispute.

vidualized suspicion to justify the initial search. Otherwise, the Court would not have included the scope of the search as a second element of their overall "reasonableness" analysis. Addressing the search of a student's personal property in *T.L.O.*, the Court indicated that the scope of such a search would be defined by the reasonableness of the methods used in the context of the objectives of the search, the age and sex of the student, and the nature of the suspected infraction.

■ Applying this criteria to the inherently more intrusive search herein, we cannot uphold the strip search of the appellant as reasonable. The appellant was suspected of stealing money. Such activity should never be condoned or encouraged in our schools. However, evaluating the nature of the suspected infraction strictly in terms of the danger it presents to other students, it does not begin to approach the threat posed by the possession of weapons or drugs. Quite simply, the appellant's suspected conduct did not pose the type of immediate danger to others that might conceivably necessitate and justify a warrantless strip search. The scope of this particular search exceeded what could be defined as reasonable under the circumstances. As we noted above, the *T.L.O.* Court indicated that "the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools." 469 U.S. at 343, 105 S.Ct. at 743. "Although this Court may take notice of the difficulty of maintaining discipline in the public schools today, the situation is not so dire that students in the schools may claim no legitimate expectations of privacy." *Id.* at 338, 105 S.Ct. at 741.

■ We conclude that in the absence of exigent circumstances which necessitate an immediate search in order to ensure the safety of other students, a warrantless strip search of a student conducted by a school official is presumed to be "excessively intrusive" and thus unreasonable in scope.

Because we find that the strip search of the appellant was excessively intrusive and unreasonable in violation of his constitutional rights, we reverse the judgment of the Circuit Court of Pocahontas County.

Reversed.

NEELY, Justice, dissenting:

Based on the precedent so ably set forth by the majority, I dissent. Indeed, had the appellant been suspected of stealing an elephant, searching his underwear would have been "unreasonable." But where else would a guilty child hide $100? I suppose that he could have taped the hundred dollar bill to his forehead on the theory that the best place to hide things is in plain view, and, of course, he could have placed it in his desk where a less intrusive search would have easily uncovered it.

However, nine out of ten experienced thieves believe that the best place to *hide* something is where it is unlikely to be discovered. If any search is justified, then a search reasonably calculated to discover *hidden* contraband is justified. Children are not adults. Schools stand in *loco parentis* and are entitled to do anything that a parent could do under similar circumstances to protect the health, safety and morals of a child and to maintain the proper functioning of the school. If we wonder why our schools are going to hell in a handbasket, it's probably because of decisions like this one.