No. 18-0086 - *Jane Doe v. Logan County Board of Education*

**FILED**
**June 4, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WORKMAN, Justice, concurring:

"A central purpose of law is to protect the weak from the strong and to compensate victims for injuries caused by carelessness and neglect. Unfortunately, when confronted by child abuse in the schools, courts often fail to fashion effective remedies." Todd A. DeMitchell, *The Duty to Protect: Blackstone's Doctrine of In Loco Parentis: a Lens for Viewing the Sexual Abuse of Students*, 2002 BYU Educ. & L.J. 17, 17 (2002) (attribution omitted). I concur in the Court's decision, including our finding that the petitioner's second assignment of error–that the circuit court failed to consider her separate claim for violation of a fiduciary duty–lacked merit.[1] It is important, however, to make clear that a fiduciary duty does exist between students and county boards of education,[2] and that a breach of that duty would be strong evidence of negligence for claims covered by the Governmental Tort

---

[1] Because the circuit court's dismissal order reflects that it did consider that claim, we find no error.

[2] The petitioner alleged in her complaint that the respondent board of education and its employees breached its fiduciary duty to her in the hiring, retention, and supervision of its employees, including her teacher, Mr. Cain, who sexually abused her. Mr. Cain was charged and convicted of this criminal misconduct and sentenced to serve a term of imprisonment.

1

Claims and Insurance Reform Act ("Tort Claims Act").[3] W.Va. Code §§ 29-12A-1 to -18 (2018).

As this Court stated more than a century ago, a fiduciary relationship exists "wherever a trust, continuous or temporary, is specially reposed in the skill or integrity of another . . . or the bodily custody, of one person, is placed in the charge of another." *McKinley v. Lynch*, 58 W.Va. 44, 57, 51 S.E. 4, 9 (1905) (citation omitted). While this Court has not previously addressed whether teachers, schools, and/or boards of education owe a fiduciary duty to their students, there is clear legal authority for finding that they do.

To begin, primary and secondary school attendance is compulsory in West Virginia. *See* W.Va. Code § 18-8-1a (2016 & Supp. 2018). In light of compulsory education laws, educators, including boards of education, owe certain duties to the children attending their schools. As one commentator has noted,

> When parents send their children to school, in accordance with compulsory education laws, the school, through its educators, assumes some of the duties owed by the parent to the child. . . .

---

[3] The Tort Claims Act provides immunity for political subdivisions in certain instances. *See* W.Va. Code § 29-12A-5. The Tort Claims Act also provides that political subdivisions are liable in damages for injuries to persons or property arising out of negligence. *See* W.Va. Code § 29-12A-4; *see also Wheeling Park Comm' v. Dattoli*, 237 W.Va. 275, 281, 787 S.E.2d 546, 552 (2016) ("[F]or a plaintiff to prevail in a claim brought against a political subdivision under W. Va. Code § 29-12A-4(c), the plaintiff . . . must prove the elements of negligence.").

> Schools assume custody of students while they are deprived of the protection of their parents while attending school. "The doctrine in loco parentis encompasses the common law view of the legal status of minors in the public school setting."
>
> Acting in the place of parents is an accepted and expected role assumed by educators and their schools. This doctrine has been recognized in state statutes and court cases. For example, the United States Supreme Court noted that there exists an "obvious concern on the part of parents, and school authorities acting in loco parentis, to protect children–especially in a captive audience–from exposure to sexually explicit, indecent, or lewd speech." According to the Supreme Court, school officials have authority over students by virtue of in loco parentis and a concomitant duty of protection.

DeMitchell, *The Duty to Protect,* 2002 BYU Educ. & L.J. at 18-20 (footnotes omitted).

Similarly, one court has explained that

> "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a . . . duty to the other." *Restatement (Second) of Torts* § 314A at 118 (1965). "[A] child while in school is deprived of the protection of his parents or guardian. Therefore, the actor who takes custody . . . of a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him." *Id.* § 320 comment b at 131. We agree with the majority of courts from other jurisdictions that schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision.

*Marquay v. Eno*, 662 A.2d 272, 279 (N.H. 1995). In this same tenor, former Justice Neely

sagely observed in his dissent in *Rogliano v. Fayette County Board of Education*, 176 W.Va.

700, 347 S.E.2d 220 (1986), that

3

[f]or approximately seven hours a day, five days a week—nearly half of a child's waking existence—the children of this State are a captive audience of *the teachers hired by local boards of education*. During the impressionable school-age years, teachers are not merely instructors in sciences and letters. They are authority figures, role models, behavioral examples, surrogate parents. After a fashion, teachers stand *in loco parentis*. Children learn much more from their teachers than the quadratic equation and the proper spelling of "dirndl"—they learn important values and morals. One of the most important values children learn from their teachers is respect for the law. If the state may require parents to relinquish their children to the influence of public school teachers on a daily basis, then surely it is reasonable for parents to demand that public school teachers adhere to standards of conduct consonant with the moral standards of the community, especially when such conduct is required by law.

*Id.* at 705, 347 S.E.2d at 226 (emphasis added); *see also* Syl. Pt. 7, in part, *Cobb v. W.Va. Human Rights Comm'n*, 217 W.Va. 761, 619 S.E.2d 274 (2005) ("West Virginia public school teachers and school administrators stand *in loco parentis* to their students[.]"); *State ex rel. Galford v. Mark Anthony B.*, 189 W.Va. 538, 546, 433 S.E.2d 41, 49 (1993) (Neely, J., dissenting) ("Schools stand *in loco parentis* and are entitled to do anything that a parent could do under similar circumstances to protect the health, safety and morals of a child and to maintain the proper functioning of the school."). Other courts have similarly recognized that this *in loco parentis* relationship can lead to a school's fiduciary responsibility to its students.

For example, in *McMahon v. Randolph-Macon Academy*, No. 97-11, 1997 WL 33616521 (Va. Cir. Ct. June 16, 1997), a student sued her boarding school after a staff member developed a sexual relationship with her. After observing that fiduciary rights and duties exist in other relationships, such as between a banker and its customer and an employee and her employer, the court determined that the relationship between a school and its minor student certainly "has the same dignity under the law as the relationship between a bank and its customers . . . ." *Id.* at *2. Applying fiduciary principles, the court found that the boarding school acted *in loco parentis* for its minor students. Although the petitioner in the case at bar was not a boarding student, she was a minor student entrusted to the care of her school and its teachers, including Mr. Cain, who were employed, retained, and supervised by the respondent, the Logan County Board of Education ("Board"). *See Nelson v. Turner*, 256 S.W.3d 37, 41 (Ky. Ct. App. 2008) (recognizing a "fiduciary quasi-parental relationship" between a school district and its students).

Indisputably, teachers wield significant power and influence over the students entrusted to their care. As provided in West Virginia Code § 18A-5-1 (2016), a "teacher shall stand in the place of the parent(s) or guardian(s) or custodian(s) in exercising authority over the school and has control of all students enrolled in the school from the time they reach the school until they have returned to their respective homes. . . ." Additionally, county boards of education are authorized to "[c]ontrol and manage all of the schools and school

5

interests for all school activities and upon all school property owned or leased by the county[.]" W.Va. Code § 18-5-13(a) (2016 & Supp. 2018), in part. Of particular interest, given the claims asserted in the case at bar, is that "[c]ounty boards of education shall, to the extent funds are provided, establish programs for the prevention of . . . child assault." W.Va. Code § 18-5-15c(b) (Supp. 2018), in part. Clearly, these cumulative responsibilities and obligations, particularly when considered within the context of an *in loco parentis* relationship, establish a county board of education's heightened responsibility to its students, *i.e.*, a fiduciary duty.

The Board argues that because a fiduciary duty is a heightened duty, there is no claim for a breach of that duty under the Tort Claims Act. More specifically, the Board argues that this Court has equated the negligence covered by the Act[4] with the common law

---

[4] West Virginia Code § 29-12A-4 provides, in part, as follows:

> (c) [A] political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> ....
>
> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

(continued...)

6

negligence standard, *i.e.*, duty, breach, and injury proximately caused by the breach. However, these common law negligence elements are not necessarily dissonate with the elements of a breach of fiduciary duty claim.[5]  Nonetheless, absent a cause of action for a breach of fiduciary duty under the Act, evidence that a fiduciary duty was breached would be strong evidence of negligence.  *Cf.* Syllabus, in part, *Lane v. Blair*, 162 W.Va. 281, 250 S.E.2d 124 (1978) (addressing whether members of a board of education could be removed

---

[4](...continued)
....

> (4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions . . . .

> (5) In addition to the circumstances described in subdivisions (1) to (4), subsection (c) of this section, a political subdivision is liable for injury, death or loss to persons or property when liability is expressly imposed upon the political subdivision by a provision of this code.

[5]*See State ex rel. Affiliated Const. Trades Found. v. Vieweg,* 205 W.Va. 687, 701, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring) (observing that "[a]lthough this Court has not previously identified precisely the elements of a cause of action for a breach of a fiduciary duty, courts have held that the elements of such a cause of action are the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach."); *see also* Syl. Pt. 3, *McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 787 (Neb. Ct. App. 2011) ("**Negligence.**  The elements of negligence constitute the elements of a breach of fiduciary duty cause of action."); *Pool v. Farm Bureau Town & Country Ins. Co. of Missouri*, 311 S.W.3d 895, 906 (Mo. Ct. App. 2010) ("To make a submissible case for breach of fiduciary duty, Plaintiffs 'had to present facts showing:  (1) the existence of a fiduciary relationship between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm.' *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503, 508 (Mo. App. W.D. 2005).").

from office for violating a statutory prohibition against unlawful expenditures and finding that "Members of a Board of Education occupy a fiduciary position and are under a duty to make detailed inquiry into any matter which appears to be wrong; failure to do so is negligence . . . ."); *see also Zang v. Northwes  tern Title Co.*, 185 Cal.Rptr. 176, 180 (Cal. Ct. App. 1982) ("The conclusion that Northwestern and Chance owed Zang a fiduciary duty is a conclusion of law here consistent with a negligence theory.  The trial court's conclusion that the breach of fiduciary duty amounted to negligence was . . . substantial evidence.").

For the foregoing reasons, I respectfully concur.